### Danny MALESEVIC, Plaintiff,

v.

### TECOM FLEET SERVICES, INC.; John Seabrook, individually and in his official capacity as liaison to the Mayor's Office of the City of Gary, Indiana; City of Gary, Indiana, Defendants.

No. 2:97 cv 38 AR.

United States District Court,
N.D. Indiana,
Hammond Division.

Sept. 23, 1998.

Danny Malesevic, Valparaiso, IN, pro se.

Theodore J. Johnson, Foelber and Johnson, Valparaiso, IN, for Danny Malesevic.

Thomas J. Piskorski, Laura A. Lindner, Seyfarth Shaw Fairweather and Geraldson, Chicago, IL, Robert E. Bettac, Mark J. Levine, Akin Gump Strauss Hauer and Feld, LLP, San Antonio, TX, for Tecom Fleet Services, Inc.

Thomas J. Piskorski, Laura A. Linder, Seyfarth Shaw Fairweather & Geraldson, Chicago, IL, Rebecca L. Wyatt, City of Gary, Legal Dept., Gary, IN, Robert E. Bettac, Mark J. Levine, Akin Gump Strauss Hauer and Feld, LLP, San Antonio, TX, for John Seabrook.

Rebecca L. Wyatt, City of Gary, Legal Dept., Gary, IN, for City of Gary, Indiana.

## ORDER

RODOVICH, United States Magistrate Judge.

This matter is before the court on the Motion for Summary Judgment filed by the defendants, City of Gary and John Seabrook, on May 28, 1998, and the Motion for Summary Judgment filed by the defendants, Tecom Fleet Services, Inc. and John Seabrook, on June 1, 1998. For the reasons set forth below, the motions are **GRANTED.**

### Background

Danny Malesevic is a white male. In April, 1993, he began working as a lead technician mechanic for Ryder MLS, Inc., an independent contractor who was providing vehicle maintenance services for the City of Gary. Ryder's contract with the City of Gary expired on June 8, 1996, and Malesevic, along with other Ryder employees, were hired temporarily by the City of Gary to continue servicing its vehicles. As a lead tech, Malesevic's job responsibilities included light and medium duty vehicle repair, some heavy duty vehicle repair, and shop supervisor when the regularly assigned shop supervisor was on vacation. His rate of pay in July, 1996, was $13.19 an hour.

In July, 1996, the City of Gary awarded its vehicle maintenance contract to the defendant, Tecom Fleet Services, Inc. Under the terms of the contract, Tecom had sole responsibility for all personnel decisions. James Scarborough, the person who was placed in charge of setting up the operations and hiring employees to staff the contract, posted a list of available job openings at the vehicle maintenance department, arranged for the distribution of employment applications, and interviewed the applicants.

On July 16, 1996, Malesevic applied for an "open" position, meaning he was interested in a number of available positions. On his application, Malesevic listed his present position as lead tech 1 and his work duties as light and moderate equipment repair. During his interview with Scarborough and human relations manager Vicki Bush, Malesevic offered to provide Scarborough with documents showing his training, certifications, and degrees, but Scarborough indicated to him that all employment decisions would be based solely on the information provided on the employment applications. Three days after the interview, Malesevic was offered a position as an auto technician at the rate of $12.60 an hour. Because the position would have required him to take a reduction in pay, Malesevic notified the city liaison officer, John Seabrook, that he would not accept the position. Malesevic subsequently obtained a mechanic's position at an automobile dealership earning $17.61 an hour.

During his employment with the City of Gary, Malesevic contends that he was harassed repeatedly and made to feel unwelcome by both his co-workers and Seabrook. He alleges that Seabrook exhibited racial bias by stating that he would be "running the show" and that the City garage would be an all "black shop." Malesevic further alleges that he was called racial slurs and subjected to derogatory comments on a daily basis by his co-work-

ers and that Seabrook failed to take corrective action.

On January 22, 1997, the plaintiff commenced this action against Tecom, Seabrook, and the City of Gary pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. First, he contends that Tecom intentionally discriminated against him on the basis of race in violation of Title VII and 42 U.S.C. § 1981 by refusing to hire him as a heavy equipment technician. Second, he asserts a Section 1983 claim against all defendants for depriving him of equal employment opportunities in violation of the Equal Protection Clause of the Fourteenth Amendment. Third, he claims that the City of Gary and Seabrook subjected him to a hostile work environment in violation of 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment.

In separate motions, the defendants contend that they are entitled to summary judgment on all claims. Tecom argues that Malesevic has failed to present direct or circumstantial evidence of race discrimination or to satisfy the burden shifting method of proof for race discrimination under Title VII and 42 U.S.C. § 1981. Tecom further claims that the Section 1983 claim must fail because the plaintiff has not shown that it engaged in state action. The City of Gary also argues that it is entitled to summary judgment on the Section 1983 and Section 1981 claims because the plaintiff has not identified a municipal policy or custom that caused the alleged violations. Seabrook contends that the Section 1981 and Section 1983 claims against him must be dismissed because the plaintiff has not established the presence of a hostile work environment or an intent to harass him because of his race. Finally, Seabrook submits that he cannot be held liable under 42 U.S.C. § 1983 for the alleged racial harassment committed by other employees.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sybron Transition Corporation v. Security Insurance Company of Hartford,* 107 F.3d 1250, 1255 (7th Cir.1997); *Dempsey v. Atchison, Topeka and Santa Fe Railway Company,* 16 F.3d 832, 836 (7th Cir.1994); *Southmark Corporation v. Cagan,* 999 F.2d 216, 223 (7th Cir.1993). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Oates v. Discovery Zone,* 116 F.3d 1161, 1165 (7th Cir. 1997); *Patel v. Allstate Insurance Company,* 105 F.3d 365, 367 (7th Cir.1997). A fact is material if it is outcome determinative under applicable law. *Smith v. Severn,* 129 F.3d 419, 427 (7th Cir.1997); *Estate of Stevens v. City of Green Bay,* 105 F.3d 1169, 1173 (7th Cir.1997); *Maravilla v. United States,* 60 F.3d 1230, 1233 (7th Cir.1995). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Plair v. E.J. Brach & Sons, Incorporated,* 105 F.3d 343, 346 (7th Cir.1997); *Lawshe v. Simpson,* 16 F.3d 1475, 1478 (7th Cir.1994) *Dempsey,* 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 148 (7th Cir.1994). *See also Plair,* 105 F.3d at 347; *United Association of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1268 (7th Cir.1990). *Cf. Hong v. Children's Memorial Hospital,* 993 F.2d 1257, 1261 (7th Cir.1993); *Lac du Flambeau Indians v. Stop Treaty Abuse–Wisconsin, Inc.,* 991 F.2d 1249, 1258 (7th Cir.1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the

party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also: Celotex Corporation v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *Sybron Transition Corporation*, 107 F.3d at 1255; *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir.1997); *Forman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir.1997).

## I. *Section 1983 Claims*

42 U.S.C. § 1983 creates a federal cause of action for "the deprivation under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir.1997) (*quoting Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 2082–83, 129 L.Ed.2d 93 (1994)). To prevail on a Section 1983 claim, a plaintiff must prove that (1) the defendant deprived him of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of law. *Adickes*, 398 U.S. at 150, 90 S.Ct. at 1604; *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998); *Stevens v. Umsted*, 131 F.3d 697, 700 (7th Cir.1997); *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996).

### A. *Tecom*

 For purposes of Section 1983, the "under color of law" requirement is the same as the state action requirement of the Fourteenth Amendment. *Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922, 928, 102 S.Ct. 2744, 2751, 73 L.Ed.2d 482 (1982); *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982); *Thomas v. Pearl*, 998 F.2d 447, 450 (7th Cir.1993). As a general matter, the state action requirement of the Fourteenth Amendment does not extend to "private conduct abridging individual rights." *National Collegiate Athletic Association v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 461–62, 102 L.Ed.2d 469 (1988). However, a private party's conduct may be treated as state action where there is a sufficiently close nexus between the state and the private conduct that the action "may be fairly treated as that of the State itself." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir.1996) (*quoting Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982)). The required nexus may be satisfied in two situations: where the state effectively directs, controls, or encourages the actions of a private party; and where a private party is performing functions that are "traditionally the exclusive prerogative of the State." *Wade*, 83 F.3d at 905. A private party's conduct also may be considered state action if the private party willfully participates in a conspiracy with the state or one of its employees to commit the alleged conduct. *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992). *See also Fries*, 146 F.3d at 457; *Vickery v. Jones*, 100 F.3d 1334, 1344 (7th Cir.1996).

 The plaintiff maintains that Tecom engaged in state action when it failed to offer him a heavy equipment technician position on account of his race. In support of his argument, the plaintiff relies on the fact that Seabrook, who was the City of Gary's liaison officer, also was hired by

Tecom to run its operation at the vehicle maintenance department. These dual roles, the plaintiff argues, makes it difficult to discern where Seabrook's duties as a state actor ended and his actions as a private party began. Assuming that is true, the undisputed evidence shows that Seabrook was not hired by Tecom until August 12, 1996, approximately three weeks after Tecom made the decision not to offer the plaintiff a heavy equipment technician position, and that Seabrook did not take over Tecom's operations at the vehicle maintenance department until September, 1996. Thus, any potential conflict or intermingling of roles did not exist at the time of the hiring decision that is the basis of this lawsuit. Moreover, Tecom's contract with the City of Gary expressly provided that "[Tecom] shall have responsibility for selecting personnel to perform the services" and that "the City will not direct or supervise employees of [Tecom]." (Exh. 1, p. 14) Consistent with this provision, Scarborough testified that he alone made the decision to offer the plaintiff an auto technician position rather than the higher paying heavy equipment technician position. Other than the fact that Seabrook handed out job applications for Tecom and may have notified the plaintiff about Tecom's job offer, a fact that Tecom disputes, nothing in the evidence suggests that Seabrook or any other employee of the City of Gary directed, participated in, or encouraged any of Tecom's hiring and compensation decisions.

 The plaintiff also argues that Tecom engaged in state action by virtue of the fact that it was paid out of the City of Gary budget and that the work was performed at a city-owned garage with equipment provided by the City of Gary. This monetary support and funding of Tecom's activities alone is insufficient to establish a close nexus between the private conduct of Tecom and the City of Gary. *Blum*, 457 U.S. at 1011, 102 S.Ct. at 2789. The plaintiff must show that Tecom was performing "functions [that] are so closely associated with government that a state cannot limit its accountability for their performance."

*Wade*, 83 F.3d .at 905. The maintenance and repair of city-owned vehicles simply does not rise to that level. Because the plaintiff has failed to show the required nexus such that the conduct of Tecom may be fairly treated as that of the City of Gary, the Section 1983 claim against Tecom must be dismissed. This same analysis also requires the dismissal of the Section 1983 claim against the City of Gary and Seabrook for failing to hire Malesevic as a heavy equipment technician in violation of the Fourteenth Amendment.

### B. *City of Gary and John Seabrook in his Official Capacity*

 It is well settled that liability may not be imposed against a municipal entity under a theory of respondeat superior. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 509 (7th Cir.1993) (*citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993)); *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir.1993). Rather, a municipal entity is liable

> when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Cornfield by Lewis v. Consolidated High School District No. 230*, 991 F.2d 1316, 1324 (7th Cir.1993) (*quoting Monell v. Department of Social Services*, 436 U.S. 658, 684, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978))

In other words, "a local governmental entity will be responsible for the unconstitutional acts of its employees only if those actions were taken pursuant to official policy or custom." *Eversole v. Steele*, 59 F.3d 710, 715 (7th Cir.1995). *See also Sams v. City of Milwaukee, Wisconsin*, 117 F.3d 991, 994 (7th Cir.1997). Moreover, a plaintiff cannot claim municipal liability unless he can demonstrate that the enforcement of the policy was the "moving force" be-

hind the constitutional violation. *Corn-field,* 991 F.2d at 1324. *See also Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion) ("At the very least, there must be an affirmative link between the policy and the particular constitutional violation alleged.")

A suit against a municipal officer in his official capacity also is deemed a suit against a municipal entity. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985); *McCurdy v. Sheriff of Madison County,* 128 F.3d 1144, 1145 (7th Cir.1997); *DeGuiseppe v. Village of Bellwood,* 68 F.3d 187, 189–90 (7th Cir.1995); *Perkins v. Silverstein,* 939 F.2d 463, 469 (7th Cir.1991). Thus, a plaintiff asserting a claim against an individual defendant in his official capacity must show that the defendant acted pursuant to a municipal policy or custom that deprived him of his constitutionally protected rights. *Graham,* 473 U.S. at 165–66, 105 S.Ct. at 3105; *Perkins,* 939 F.2d at 469.

In his brief, the plaintiff wholly ignores the issue of whether the City of Gary has an official policy or custom that was intended to deprive him of his equal protection rights under the Fourteenth Amendment. Perhaps that is because the plaintiff cannot point to an official policy promulgated by the City of Gary that is intended to discriminate against white employees. In fact, the City of Gary's official policy is "to provide equal opportunity employment to all employees and applicants for employment" and to ensure that "[n]o person working for the City shall be discriminated against in employment because of race ..." To protect employees from such conduct, the City of Gary has instituted a detailed grievance procedure de-

signed to address alleged discrimination, including harassment by both supervisors and employees. Because the plaintiff has failed to present any evidence that would suggest that the City of Gary has abandoned this official policy or adopted a widespread custom designed to discriminate against white employees, the Section 1983 claims against the City of Gary and Seabrook in his official capacity for creating a hostile work environment in violation of the Fourteenth Amendment must be dismissed.[1]

## C. John Seabrook in his Individual Capacity

A municipal officer may be sued in his individual capacity for actions taken under color of law. *Graham,* 473 U.S. at 165, 105 S.Ct. at 3105. However, as was the case with municipal entities, an individual cannot be personally liable under a theory of respondeat superior. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th cir.1995); *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988). To recover damages under Section 1983 against an individual, a plaintiff must establish that the defendant was personally responsible for the deprivation of a constitutional right. *Vance v. Peters,* 97 F.3d 987, 992 (7th Cir.1996); *Campbell v. Chappelow,* 95 F.3d 576, 579 (7th Cir.1996); *Gentry,* 65 F.3d at 561; *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1248 (7th Cir.1994). *See also Jenkins v. Keating,* 147 F.3d 577, 583 (7th Cir.1998). A person is responsible "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge or consent." *Gentry,* 65 F.3d at 561 (*quoting Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985)). *See also Vance,* 97 F.3d at 993. In other words, the defendant "must know about the conduct and

1. Even assuming that Malesevic could show an official policy or custom that was intended to discriminate against white employees, the City of Gary could not be held liable for creating a hostile work environment because the alleged racial comments made by Malesevic's co-workers, which included use of the word "whitey", were not physically threaten-

ing, humiliating, or sufficiently severe. They simply were offensive utterances which alone do not give rise to a hostile work environment claim. Also, the short period of time in which the alleged comments took place negates any suggestion that the harassment was pervasive enough to amount to a hostile work environment.

facilitate it, condone it, or turn a blind eye...." *Gentry*, 65 F.3d at 561 (*quoting Jones*, 856 F.2d at 992). *See also Kelly v. Municipal Courts of Marion County, Indiana*, 97 F.3d 902, 909 (7th Cir.1996) ("The plaintiff must establish that the defendant was personally involved or acquiesced in the alleged constitutional violation").

 The plaintiff contends that he repeatedly was subjected to racial comments, jokes, and derogatory statements by his co-workers. The plaintiff argues that Seabrook should be held liable for creating a hostile work environment because he failed to take corrective action to remedy the situation and participated in the racially discriminatory conduct. Putting aside the alleged conduct of Seabrook himself, there is no evidence that the harassment by the plaintiff's co-workers occurred at Seabrook's direction or with his knowledge and consent. Further, there is no evidence that the plaintiff filed any grievances related to the alleged instances of harassment or that Seabrook otherwise was or should have been aware of the conduct of the plaintiff's co-workers such that it can be said that Seabrook condoned or acquiesced in it. Thus, Seabrook cannot be held liable for the alleged harassing conduct of the plaintiff's co-workers.

As for Seabrook's own alleged conduct, the Seventh Circuit has not defined precisely "[t]he parameters of a cause of action alleging [racial] harassment as a violation of the equal protection clause," but it has noted that "such a claim generally follows the contours of a Title VII allegation of [racial] harassment." *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990) (discussing claim under Equal Protection Clause for sexual harassment); *King v. Board of Regents of the University of Wisconsin System*, 898 F.2d 533, 537 (7th Cir.1990).

 In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), the Supreme Court held that Title VII's prohibition against discrimination included conduct that had "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *See also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 478 (7th Cir.1996). A hostile work environment is one in which the harassment is so severe or pervasive that it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Oncale v. Sundowner Offshore Services, Incorporated*, 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998) (*quoting Harris*, 510 U.S. at 21, 114 S.Ct. at 370); *Gleason v. Mesirow Financial, Incorporated*, 118 F.3d 1134, 1143 (7th Cir.1997). Whether a working environment is considered hostile depends on the totality of the circumstances. Factors to consider include

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris*, 510 U.S. at 23, 114 S.Ct. at 371

 In this case, the plaintiff only alleges that Seabrook stated that he was "running the show" and that the City of Gary garage would be an "all black shop." Clearly, neither statement can be interpreted as physically threatening or humiliating. Moreover, an offensive utterance alone does not give rise to a hostile environment claim because it would not sufficiently affect the terms and conditions of a plaintiff's employment. *See Dey v. Colt Construction & Development Company*, 28 F.3d 1446, 1456 (7th Cir.1994) (*citing Harris*, 510 U.S. at 21, 114 S.Ct. at 370). *See also Saxton v. American Telephone & Telegraph Company*, 10 F.3d 526, 533 (7th Cir.1993) ("relatively isolated instances of non-severe misconduct will not support a hostile work environment claim."). For those reasons, the Section 1983 claim

against Seabrook in his individual capacity for creating a hostile work environment in violation of the Fourteenth Amendment must be dismissed.

## II. *Section 1981 Claims Against the City of Gary and John Seabrook*

Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same rights in every state and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 originally did not create a cause of action against state actors. Instead, "the exclusive federal damages remedy for the violation of rights guaranteed by § 1981 when the claim is pressed against a state actor" was Section 1983. *Jett v. Dallas Independent School District,* 491 U.S. 701, 735, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). In 1991, Congress amended Section 1981 to include "protection against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). This raised the question of whether Congress intended to overrule the Supreme court's holding in *Jett.* The Seventh Circuit has not addressed the issue, but a number of district courts have concluded that Section 1981 now permits direct action against state actors. *See McPhaul v. Board of Commissioners of Madison County,* 976 F.Supp. 1190, 1193 (S.D.Ind.1997) (collecting cases). *See also Nolen v. City of Chicago,* 1998 WL 111675, *3 (N.D.Ill. Mar.4, 1998) (same). It is unnecessary to rule definitively on this issue because even if Section 1981 were to allow a direct action against the City of Gary, the plaintiff still must identify an official policy or custom promulgated by the City of Gary that caused the alleged violation of Section 1981. *See Jackson v. City of Chicago,* 1996 WL 734701, *8 (N.D.Ill.Dec.18, 1996). Because the plaintiff has failed to identify an official policy or custom of racial discrimination, the Section 1981 claim against the City of Gary and Seabrook in his official capacity must be dismissed. The claim against Seabrook in his individual capacity also must be dismissed for the reasons discussed earlier with respect to the Section 1983 claim for racial harassment.

## III. *Title VII and Section 1981 Claim Against Tecom*

Title VII prohibits discrimination in employment because of an individual's race. 42 U.S.C. § 2000e–2(a)(1). Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every state ... to make and enforce contracts ... as is enjoyed by white citizens [and this right includes] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a)–(b), as amended by the Civil Rights Act of 1991

A plaintiff may prevail on Title VII and Section 1981 claims in one of two ways. *Sample v. Aldi, Inc.,* 61 F.3d 544, 547 (7th Cir.1995); *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir.1998); *Cowan v. Glenbrook Security Services, Inc.,* 123 F.3d 438, 442 (7th Cir.1997). He can offer direct or circumstantial evidence of discriminatory intent or, where no direct evidence exists, use the indirect burden-shifting method established in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). *See Crim v. Board of Education of Cairo School District No. 1,* 147 F.3d 535, 540 (7th Cir.1998); *Senner v. Northcentral Technical College,* 113 F.3d 750, 754 (7th Cir.1997); *Rush v. McDonald's Corporation,* 966 F.2d 1104, 1113 (7th Cir.1992). Title VII and Section 1981 claims require an equivalent analysis. *Gonzalez v. Ingersoll Milling Machine Company,* 133 F.3d 1025, 1035 (7th Cir. 1998); *Hong,* 993 F.2d at 1266 n. 7. In this

case, the plaintiff has utilized the *McDonnell Douglas* method of proof, therefore, he carries the initial burden of establishing a prima facie case of discrimination. *Crim,* 147 F.3d at 540; *Senner,* 113 F.3d at 754; *Plair,* 105 F.3d at 347.

To establish a prima facie case of race discrimination for failure to hire, the plaintiff must show: (1) he belongs to a protected group; (2) he applied for and was qualified for the position; (3) he was rejected for the position; and (4) the defendant hired a black person with similar or lesser qualifications than the plaintiff. *Pafford,* 148 F.3d at 669. *See generally Cowan,* 123 F.3d at 445; *Brill v. Lante,* 119 F.3d 1266, 1270 (7th Cir.1997); *Plair,* 105 F.3d at 347. If the plaintiff succeeds in establishing a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Crim,* 147 F.3d at 540; *Cowan,* 123 F.3d at 445. Once the defendant provides a legitimate reason for the termination, the burden shifts back to the plaintiff to establish that the defendant's proffered reasons are pretextual. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *Pafford,* 148 F.3d at 665; *Bahl v. Royal Indemnity Company,* 115 F.3d 1283, 1290 (7th Cir.1997); *Anderson v. Baxter Healthcare Corporation,* 13 F.3d 1120, 1122 (7th Cir.1994).

Despite these shifting burdens of production, the ultimate burden of persuasion remains at all times with the plaintiff. *Crim,* 147 F.3d at 540 (*citing St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993)). *See also Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 398 (7th Cir.1997); *Essex v. United Parcel Service,* 111 F.3d 1304, 1309 (7th Cir.1997). A plaintiff alleging discrimination, however, has a lesser burden when proceeding on a summary judgment motion. In *Anderson,* the Seventh Circuit explained:

Both *McDonnell Douglas* and *Hicks* speak to the burden the plaintiff bears at trial. However, for summary judgment purposes, the nonmoving party, in this case the plaintiff, has a lesser burden. He must only "produce evidence from which a rational fact-finder could infer that the company lied" about its proffered reasons for dismissal.

13 F.3d at 1124 (*quoting Shager v. Upjohn,* 913 F.2d 398, 401 (7th Cir.1990))

*See also Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 682 (7th Cir.1996); *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994); *Cliff v. Board of School Commissioners of the City of Indianapolis, Indiana,* 42 F.3d 403, 412 (7th Cir. 1994); *Schultz v. General Electric Capital Corporation,* 37 F.3d 329, 333–34 (7th Cir. 1994). If the plaintiff is unable to meet his burden, his claims must fail. *Chiaramonte,* 129 F.3d at 398.

The primary dispute between the parties is whether the plaintiff was qualified for a heavy equipment technician position with Tecom. The plaintiff claims that he was qualified for the position based on his prior experience in the field and at Ryder. Tecom contends that the plaintiff had little experience repairing heavy equipment, had no formal training on hydraulic systems, and that his training on diesel power systems was outdated. Based on his lack of experience and training on the standard systems which must be repaired and maintained on the heavy equipment used by the city, Tecom concluded that the plaintiff was unqualified for a heavy equipment technician position.

Pursuant to its authority under the contract with the City of Gary, Tecom established two classes of technicians: auto technicians and heavy equipment technicians. Although the duties and responsibilities for the two positions were identical, a heavy equipment technician had the added responsibility for maintaining and repairing specialized heavy equipment such as bulldozers, garbage trucks, fire trucks,

and dump trucks which have diesel and hydraulic systems.

As a lead tech with Ryder, the plaintiff claims that he repaired heavy duty vehicles such as fire trucks, garbage trucks, and pay loaders and that he had more years of experience and training than the other employees at Ryder who subsequently were hired by Tecom as heavy equipment technicians. The plaintiff further asserts that he held one of the highest technician positions at Ryder, a position that he says is comparable to a heavy equipment technician at Tecom. "An employee's self-serving statements about his ability, however, are insufficient to contradict an employer's negative assessment of that ability." *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992). *See also Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 865 (7th Cir.1996) ("[Plaintiff] needed to offer more than his own perception of his performance"); *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir.1996) ("A plaintiff's own opinions about his qualifications do not give rise to genuine issue of fact."); *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir.1996) ("A plaintiff's own opinions about her ... qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions."); *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 924 (7th Cir.1988) ("[Employee's] own self-interested assertions concerning her abilities are not in themselves sufficient to raise a genuine issue of material fact."); *Dale v. Chicago Tribune Company*, 797 F.2d 458, 464 (7th Cir.1986) (Employee's own self-interested, conclusory assertions of his ability are insufficient to contradict an employer's negative assessment of that ability). Scarborough testified that he did not offer a heavy equipment technician position to the plaintiff because he lacked sufficient experience repairing heavy equipment. Scarborough based his decision on the work that the plaintiff had been performing for Ryder and the City of Gary as well as the information provided by the plaintiff on his application which indicated that his present job responsibilities included only light and moderate duty repair. Because the plaintiff has not presented any objective evidence to contradict Tecom's negative assessment of his qualifications, the plaintiff cannot satisfy the second element of a prima facie case.

The plaintiff also cannot satisfy the fourth element of a prima facie case, namely, that Tecom hired black persons with similar or lesser qualifications than the plaintiff. In his brief, the plaintiff submits the employment applications of five individuals as evidence that Tecom hired several black persons with lesser qualifications as heavy equipment technicians. From the applications themselves, however, it is clear that four of the individuals were more qualified than the plaintiff. In fact, those four individuals all listed their present job responsibilities as heavy equipment repair whereas the plaintiff indicated only that he performed light and moderate equipment repair. The fifth individual, John Walker, is a little more problematic because the application submitted by the plaintiff does not list any of his prior work experiences. In his deposition, the plaintiff testified that Walker was a mechanic's helper at Ryder and that he only repaired lawn mowers. Tecom, however, submitted the affidavit of Seabrook who stated that Walker also performed heavy equipment repair while at the vehicle maintenance department, a fact not disputed by the plaintiff. Tecom also has provided a copy of Walker's resume which it claims was attached to Walker's application. The resume indicates that Walker was certified in diesel power systems and that he was a heavy equipment mechanic at Ryder. Based on this evidence, Walker was more qualified than the plaintiff for a heavy equipment technician position. Thus, the plaintiff has not met his burden on the fourth element of his prima facie case.

The standard governing summary judgment is clear. "[I]f no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict

for the party opposing summary judgment ... then summary judgment must be granted." *Oates v. Discovery Zone,* 116 F.3d at 1175 (*quoting Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 660 (7th Cir.1991)). Although "[c]aution is required in granting summary judgment," especially in employment discrimination cases, summary judgment "can be a tool of great utility in removing factually insubstantial cases from the crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mills v. First Federal Savings & Loan Association of Belvidere,* 83 F.3d 833, 846 (7th Cir.1996). To prevail on his claim the plaintiff must show that a trier of fact could find that Tecom did not hire him as a heavy equipment technician because of his race. Because the plaintiff has failed to meet his burden of establishing a prima facie case of race discrimination, summary judgment is appropriate on the Title VII and Section 1981 claim.

For the foregoing reasons, the Motion for Summary Judgment filed by the defendants, City of Gary and John Seabrook, on May 28, 1998, and the Motion for Summary Judgment filed by the defendants, Tecom Fleet Services, Inc. and John Seabrook, on June 1, 1998, are **GRANTED.**