# IN THE COURT OF APPEALS OF IOWA

No. 19-2097
Filed February 3, 2021

**ALISHA MUNOZ,**
      Plaintiff-Appellant,

**vs.**

**ADVENTURE LANDS OF AMERICA, INC.,**
      Defendant-Appellee.
_____

      Appeal from the Iowa District Court for Polk County, Coleman McAllister,
Judge.


      Alisha Munoz appeals the district court's order granting summary judgment
in favor of Adventure Lands of America, Inc. on her claims of workplace
discrimination, hostile work environment, and wrongful discharge against public
policy. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


      John Q. Stoltze of Stoltze & Stoltze, PLC, Des Moines, for appellant.

      Kelsey J. Knowles, Espnola F. Cartmill, and Erika L. Bauer of Belin
McCormick, P.C., Des Moines, for appellee.


      Heard by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Alisha Munoz brought an employment discrimination suit against her former employer, Adventure Lands of America, Inc. (Adventureland). Munoz pleaded four counts in her amended petition: (1) Adventureland engaged in sex discrimination in violation of the Iowa Civil Rights Act (ICRA); (2) Adventureland engaged in disability discrimination in violation of the ICRA; (3) Munoz was subjected to a hostile work environment; and (4) Munoz was wrongfully discharged in violation of public policy. The district court granted summary judgment to Adventureland on all four counts. On appeal, we agree with the district court that Munoz failed to provide evidence of an adverse employment action on her discrimination claims and she failed to articulate a valid public policy to support her wrongful-discharge claim. However, we find she generated a genuine issue of material fact on part of her hostile-work-environment claim, so summary judgment should not have been granted on that count in its entirety. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

### I.      Background Facts and Proceedings

Munoz began working as a seasonal employee for Adventureland in May 2017. Munoz worked at Adventureland's amusement park in Altoona, first in the rides department operating rides. Due to concerns Munoz could lose consciousness without warning, Adventureland quickly moved her to the foods department, where she typically served food and waited on customers. On September 3, Munoz verbally told her supervisor that she intended for the next day—Labor Day—to be her final day working for Adventureland. The supervisor told Munoz that day—September 3—would be her final day of work, but

Adventureland paid Munoz a season bonus as if she had worked through Labor Day. Munoz filed a complaint with the Iowa Civil Rights Commission and later obtained a right-to-sue letter. Munoz then filed a petition with the district court, which she later amended to claim disability discrimination, gender discrimination, workplace harassment, and wrongful discharge against public policy. Adventureland sought summary judgment. After a hearing, the district court granted summary judgment in favor of Adventureland on all counts. Munoz filed a motion to reconsider, which the court denied. Munoz appeals.

## II.     Standard of Review

"We review a district court's grant of summary judgment for correction of errors at law." *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). "Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Iowa R. Civ. P. 1.981(3)). "We view the summary judgment record in a light most favorable to the nonmoving party." *Id.* "[O]ur review is 'limited to whether a genuine issue of material fact exists and whether the district court correctly applied the law.'" *Id.* (citing *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008)).

## III.    Analysis

### A. Sex and Disability Discrimination

The ICRA makes it an "unfair or discriminatory practice" for an employer to discharge an employee due to any of several characteristics of the employee, including sex and disability. Iowa Code § 216.6(1)(a) (2017). An essential element of an employment-discrimination claim is the plaintiff must show he or she suffered

"an adverse employment action." *Farmland Foods, Inc. v. Dubuque Hum. Rts. Comm'n*, 672 N.W.2d 733, 741 (Iowa 2003).

On appeal, Munoz claims she suffered an adverse employment action when Adventureland terminated her or constructively discharged her. As to termination, there is no genuine issue of material fact that Munoz resigned rather than having her employment terminated by Adventureland. Munoz testified to her final day during her deposition:

> Q. On September 3rd, 2017, you had a conversation with [the supervisor] where he told you that you could just go home that day; right? A. Correct.
> Q. So, in other words, you gave Adventureland notice that your last day was going to be September 4th; and they accepted your resignation and said, no, your last day is going to be September 3rd; right? A. It wasn't—I wouldn't even say resignation because he told me I could go home and never come back again. The plan was to finish out Labor Day, do what I said, and [the supervisor] obviously terminated me prior to that date.
> Q. He didn't let you finish your notice period; right? A. Correct.

Munoz disagreed with characterizing her separation of employment as a "resignation," and on appeal she complains she was not allowed to speak to another superior before the end of her employment. However, her testimony clearly shows she first gave Adventureland her resignation with an intent to work an additional day, and Adventureland then ended her employment immediately rather than allow her to work a notice period. The record contains no evidence Adventureland intended to end Munoz's employment before she conveyed her resignation. Under the facts before us, Munoz caused the severance of her employment, and Adventureland did not inflict an adverse employment action on her by refusing to allow her to continue working after she expressed her intention to resign. *See Bradshaw v. Cedar Rapids Airport Comm'n*, 903 N.W.2d 355, 362

(Iowa Ct. App. 2017) ("The fact the parties disagreed on the last day Bradshaw would be in the office and the last day of his employment . . . is immaterial to the question of who took action to sever the relationship."); *see also Curby v. Solutia, Inc.*, 351 F.3d 868, 872 (8th Cir. 2003) ("An employee cannot submit a resignation and then claim the employer's acceptance of the resignation is an adverse employment action.").

As to constructive discharge, a constructive discharge occurs "when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 591 (Iowa 2017) (quoting *Van Meter Indus. v. Mason City Hum. Rts. Comm'n*, 675 N.W.2d 503, 511 (Iowa 2004)). During the summary judgment hearing, Munoz's counsel acknowledged constructive discharge "was not preserved under the civil rights commission" and "[i]t was not put in our pleadings." Not surprisingly given this admission, the court's summary judgment order did not address constructive discharge. Munoz raised constructive discharge in her motion to reconsider, but she did not explain how constructive discharge was properly before the district court and the court did not address the issue in denying her motion. Therefore, she has not preserved constructive discharge as an issue on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

### B. Hostile Work Environment

To prevail on a claim of a hostile work environment, "the employee must show '(1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment.'" *Simon Seeding & Sod, Inc. v. Dubuque Hum. Rts. Comm'n*, 895 N.W.2d 446, 468 (Iowa 2017) (quoting *Farmland Foods*, 672 N.W.2d at 744). The district court focused on the fourth element, which requires Munoz to prove "she 'subjectively perceived the conduct as abusive' and that 'a reasonable person would also find the conduct to be abusive or hostile.'" *Id.* at 469 (quoting *Farmland Foods*, 672 N.W.2d at 744).

> The objective determination considers all of the circumstances, including: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct was physically threatening or humiliating or whether it was merely offensive, and (4) whether the conduct unreasonably interfered with the employee's job performance. These factors and circumstances must disclose that the conduct was severe enough to amount to an alteration of the terms or conditions of employment. Thus, hostile-work-environment claims by their nature involve ongoing and repeated conduct, not isolated events.

*Id.* (quoting *Farmland Foods*, 672 N.W.2d at 744).

To succeed on a claim of a hostile work environment, the employee must meet a high standard. *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013) (referring to the standard as "demanding" and noting the standard "does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace" (quoting *Wilkie v. Dep't of Health &*

*Human Servs.*, 638 F.3d 944, 955 (8th Cir. 2011))).[1]  To support a claim, the conduct must be extreme and not merely rude or unpleasant.  *Stoddard v. BE & K, Inc.*, 993 F. Supp. 2d 991, 1002 (S.D. Iowa 2014); *see also Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003) ("Conduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law.").

The high threshold has resulted in denial of many cases involving offensive conduct.  *See, e.g.*, *Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 775–79 (8th Cir. 2012) (finding employee failed as a matter of law to demonstrate the elements necessary to establish a hostile work environment claim in spite of the fact plaintiff, who was "moderately mentally retarded" and spoke with a stutter, was frequently called "fucking dummy," "fucking retard," "stupid," "idiot," and "numb nuts," and was asked by a coworker if his mother dropped him on his head when he was little); *Shaver*, 350 F.3d at 721–23 (8th Cir. 2003) (upholding summary judgment in spite of the fact the employee, who had epilepsy, was routinely referred to as "platehead" for a period of about two years, several co-workers suggested he was stupid, and one coworker said he "pissed in his pants when the microwave was on").

We also recognize the relatively short period of time over which Munoz was employed, as a short period of time is a factor in determining whether a hostile-work-environment claim is viable.  *See, e.g.*, *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) (finding no hostile work environment when the claimed

---

[1] We cite federal decisions interpreting the federal civil rights act because those decisions may be persuasive in construing the ICRA, although we are not bound by them.  *Lynch v. City of Des Moines*, 454 N.W.2d 827, 833 n.5 (Iowa 1990).

incidents were few in number and occurred over a short period of time); *Benette v. Cinemark U.S.A., Inc.*, 295 F. Supp. 2d 243, 251 (W.D.N.Y. 2003) (noting that, though there is no threshold time period a plaintiff must surpass, three months was an insufficient period of time to support the claim given the nature of the conduct); *Malesevic v. Tecom Fleet Servs., Inc.*, 72 F. Supp. 2d 932, 939 n.1 (N.D. Ind. 1998) ("Also, the short period of time in which the alleged comments took place negates any suggestion that the harassment was pervasive enough to amount to a hostile work environment.").

While mindful of the high bar Munoz must clear and the relatively short period of time over which she was employed, we must also be mindful of the legal standards that apply at the summary judgment stage of the proceeding. In reviewing a district court's grant of summary judgment, we view the record in the light most favorable to the nonmoving party. *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). We also draw all legitimate inferences that can be deduced reasonably from the record in favor of the nonmoving party. *Id.* Hostile-work-environment claims present "mixed question[s] of law and fact" that are "especially well-suited for jury determination." *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) (citation omitted). "Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury." *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018) (citation omitted); *see also Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (leaving measure of severe or pervasive conduct to jury because it is "quintessentially a question of fact" (citation omitted)); *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (recognizing "that 'the severity and

pervasiveness evaluation is particularly unsuited for summary judgment' because it is inherently fact-found by nature" (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999))). Further, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Schiano*, 445 F.3d at 606 (citation omitted).

Applying the legal standards for review of a summary judgment ruling, we find Munoz has generated a factual dispute that precludes summary judgment on her hostile-work-environment claim based on disability. Viewing the record in the light most favorable to Munoz, we note Munoz alleged daily bullying and harassment from her supervisors at Adventureland. For example, she testified one supervisor had a "big problem" with her medical conditions and once asked her: "why the hell [are you] even working with restrictions like that?" She recalled another supervisor telling her she "need[ed] to work less hours because [she was] being a bitch." In another exchange, a third supervisor noticed bruising on Munoz's face, which Munoz attributed to passing out and falling as a result of her medical condition. The supervisor asked if her husband had beat her. When Munoz replied that he had not, the supervisor said, "Because that's what Hispanics do. They beat their bitches." Munoz also testified the third supervisor called her "a gangbanger looking to get something," and accused her of faking her illness and "being on so many drugs that [she] couldn't even pass a drug test." Beyond those comments, the three supervisors made fun of her "almost daily" because of the frequency of her bathroom use, according to Munoz's deposition testimony. Those three supervisors also told her "on a regular basis" that it would be easy to get her fired.

In that same vein, the third supervisor called her "worthless" on "multiple different occasions" and advised she should "give up on ever being promoted." When she reported some of these incidents to the director of her department, she received little satisfaction. In fact, the director participated in the belittling by calling Munoz "Alisha the Bruised" in a group email. These facts—considered in the light most favorable to Munoz—contributed to the creation of a jury question whether she was subjected to a hostile work environment.

Nor is Adventureland entitled to summary judgment because Munoz was a seasonal worker. As previously noted, the relatively short period Munoz was employed is a factor to consider as to whether there was a hostile work environment, but it does not preclude her claim. Our supreme court has found sufficient evidence to support a finding of a hostile work environment when harassing remarks were made "two to three times a week over the two-month period" the employee worked at the employer's place of business. *See Simon Seeding*, 895 N.W.2d at 470. Munoz's testimony that she endured "almost daily" derogatory comments about her medical condition or its symptoms contributes to the creation of a jury question on her hostile-work-environment claim.

Adding to the creation of a jury question is the fact that the alleged harassers were not simply co-workers, but supervisors with direct authority over Munoz. Harassing behavior of a manager carries more potency than that of a co-equal. *See Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018). Further, under the ICRA, Munoz may proceed against Adventureland "on either a direct negligence or vicarious liability theory for supervisor harassment" in her claim alleging a hostile work environment. *See Haskenhoff*, 897 N.W.2d at 575. Plus, we consider

Munoz's testimony that the Adventureland managers bullied other employees who had "medical notes," saying, "why the hell are you even working?"  Such claimed pattern of conduct adds to the jury question whether Munoz was subjected to overall hostility in the workplace.  *See Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001) ("[E]vidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination.").

Finally, we note a jury question is generated on whether the harassment affected a term, condition, or privilege of Munoz's employment.  Munoz testified she was diagnosed with post-traumatic stress disorder and suffered "horrible anxiety" since working at Adventureland.  Even without the claimed diagnosis, Munoz generated a fact question on the effect of the alleged hostility on her quality of work.  "A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  In line with that description, Munoz testified that she submitted her resignation because she did not want to endure continued harassment for her medical conditions.  Viewing the evidence in the light most favorable to Munoz as the nonmoving party, a jury question exists whether the offensive comments and humiliating treatment alleged by Munoz unreasonably interfered with her job performance.

For the foregoing reasons, we find Munoz has generated a fact question that precludes summary judgment on her hostile-work-environment claim based

on disability discrimination. Therefore, we reverse the district court on that claim and remand for further proceedings.

Before leaving the topic of Munoz's hostile-work-environment claim, we need to address the scope of the remand by addressing Munoz's complaint that the district court only considered her claim based on disability but neglected to consider her claim based on gender. We reject this contention.

The count in Munoz's amended petition asserting a claim for hostile work environment mentions nothing about gender. Of course, Iowa permits "notice pleading," which abolishes technical forms of pleadings and requires only a "simple, concise, and direct" statement of the claim. *See* Iowa R. Civ. P. 1.402(2)(a). However, "'notice pleading' requires, at a minimum, 'fair notice' of the claim asserted so the other party can make an adequate response." *Schmidt v. Wilkinson*, 340 N.W.2d 282, 283 (Iowa 1983) (quoting *Gosha v. Woller*, 288 N.W.2d 329, 331 (Iowa 1980)). Submitting a pleading that references disability, but does not mention gender, did not provide "fair notice" to Adventureland or the district court. Furthermore, when asked about her harassment claim during her deposition, Munoz acknowledged that her claim was based only on the conduct directed toward her surrounding her doctors' notes and restrictions. Finally, when resisting Adventureland's motion for summary judgment on this count, Munoz expressly stated her position that she was subjected to the complained-of treatment "due to her disabilities." Based on these circumstances, we find Munoz failed to properly plead and has therefore waived any claim based on gender-based hostile work environment. She is not permitted to create such a claim in a

motion to reconsider after her pled claim (i.e., disability-based hostile work environment) was dismissed via summary judgment.

### C. Wrongful Discharge in Violation of Public Policy

In order to prevail on a claim of wrongful discharge in violation of public policy, Munoz must prove:

> (1) existence of a clearly defined public policy that protects employee activity; (2) the public policy would be jeopardized by the discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason for the employee's discharge; and (4) there was no overriding business justification for the termination.

*Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009). Even if we assume Munoz was terminated, she has not pointed to a "clearly defined public policy" to support her wrongful-discharge claim. To the extent she points to ICRA as a source of public policy, ICRA offers a cause of action for employees to enforce violations of the act. *See* Iowa Code §§ 2162.15–.17. "[W]hen a civil cause of action is provided by the legislature in the same statute that creates the public policy to be enforced, the civil cause of action is the exclusive remedy for violation of that statute." *Ferguson v. Exide Techs., Inc.*, 936 N.W.2d 429, 435 (Iowa 2019). Therefore, Munoz cannot rely on ICRA to provide public policy to support her wrongful-discharge claim, and her wrongful-discharge claim must fail.

### IV.    Conclusion

We find no genuine issue of material fact and the district court properly found Adventureland was entitled to judgment as a matter of law on Munoz's claims of sex discrimination, disability discrimination, and wrongful discharge in violation of public policy. Therefore, we affirm those rulings. Further, Munoz is not

permitted to pursue a claim for hostile work environment based on gender for the reasons stated in this opinion.

As to Munoz's claim for hostile work environment based on disability, we find Adventureland has failed to show there is no genuine issue of material fact. Therefore, we reverse the decision of the district court granting Adventureland summary judgment on the hostile-work-environment claim based on disability and remand for further proceedings on that claim only.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**