Billy D. SAMS, d/b/a Grant Park Auto Sales, Plaintiff–Appellant,

v.

CITY OF MILWAUKEE, WISCONSIN, a municipal corporation, Defendant–Appellee.

No. 96–3982.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1997.

Decided June 26, 1997.

Before CUMMINGS, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Appellant Billy D. Sams, d/b/a Grant Park Auto Sales ("Sams"),[1] a retail seller of used automobiles, sold a 1987 Chevy Blazer to Brian K. McClain, a citizen of Illinois, retaining a purchase money security interest in the vehicle. After the Blazer was abandoned by its owner on the streets of Milwaukee, the City towed the truck, and disposed of it by public sale six weeks later. Because Sams was not notified prior to the sale, he was unable to protect his security interest and therefore received none of the sale's proceeds. Sams, unsuccessful in his attempts to recoup his losses from the City of Milwaukee, brought suit under 42 U.S.C. § 1983. Sams claims that the procedure employed by the City to locate and provide notice to lienholders prior to the sale of abandoned motor vehicles violates due process. Finding that the City of Milwaukee makes reasonably diligent efforts to ascertain the identity of any potential lienholders, the district court rejected this argument. Because we conclude that the factual record is insufficient to support the district court's grant of summary judgment, we remand the case to the district court.

I.

Under section 349.13(3) of the Wisconsin Statutes, the City of Milwaukee is authorized to remove abandoned, illegally parked, stolen, or wrecked cars from the City's streets. After the City tows a vehicle, the Milwaukee Police Department transmits a computerized inquiry to the Wisconsin Department of Transportation in an attempt to ascertain the names and addresses of the towed vehicle's owner and lienholders. If there is evidence that the vehicle may be registered in another jurisdiction, such as out-of-state license plates, the Police Department also searches that state's Department of Transportation or Motor Vehicles. A computer generated let-

Scott M. Boyd, Rockford, IL, Michael R. Barth, Robert W. Roth, James J. Eichholz (argued), Roth & Binn, Brookfield, WI, for Plaintiff–Appellant.

Grant F. Langley, Linda Uliss Burke (argued), Office of the City Attorney, Milwaukee, WI, for Defendant–Appellee.

1. As the district court explained in its order, although the case was originally captioned as a class action, plaintiff made no efforts to certify the class under Federal Rule of Civil Procedure 23. Therefore, there are no claims other than plaintiff's individual claims before this court.

ter is then sent to any parties identified in the search.

After the 1987 Chevy Blazer at issue was towed, the City of Milwaukee followed the above procedure. Because the truck had Illinois license plates, computerized inquiries were made to both the Wisconsin and Illinois Departments of Transportation. According to the affidavit of the sergeant of the Milwaukee Police Department responsible for these inquiries, the search revealed the name of the truck's owner, but "the portion [of the inquiry form] for the lienholder's name was left blank."

Sams maintains that the procedure utilized by the City is not reasonably calculated to provide notice to lienholders and therefore does not comport with due process. He argues that, because, under Illinois law, the proper location to conduct a search for lienholders of record is the Illinois Secretary of State's Office,[2] it is unreasonable for the City of Milwaukee to conduct searches for vehicle liens elsewhere. According to Sams, due process requires the City to utilize the procedures established by each individual state for obtaining the names of persons with security interests in property. Had the City performed its search with the Illinois Secretary of State's Office, a search that is conducted free of charge, it would have discovered that Sams held a perfected purchase money security interest in the vehicle.

## II.

■ Because Sams' vehicle lien was a protected property interest, *cf. Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983) (stating mortgage is "substantial property interest that is significantly affected by a tax sale"), the City could not deprive him of this property interest without due process of law. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see also Tulsa Prof'l Collection Services, Inc. v. Pope*, 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988). "Whether a particular method of notice is reasonable depends on the particular circumstances." *Tulsa*, 485 U.S. at 484, 108 S.Ct. at 1344. The court must "balanc[e] the interest of the State and the individual interest sought to be protected by the Fourteenth Amendment." *Id.* The district court concluded that, under the circumstances, the procedures employed by the City were reasonable and that summary judgment for the City was appropriate. Our review of the district court's grant of summary judgment is *de novo. See Geier v. Medtronic, Inc.*, 99 F.3d 238, 240 (7th Cir.1996); *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 301 (7th Cir.1996).

■ In support of its conclusion that the City used reasonably diligent efforts to ascertain the identity of potential lienholders, the district court made the following findings: that "[t]he City made an inquiry to the central authority in Illinois generally responsible for registering vehicles to ascertain the names and addresses of persons with an interest in the vehicle"; that the procedure used "was likely to involve minimal risk of erroneous deprivation of property"; and that requiring additional procedures "would involve a significant fiscal and administrative burden on the City." The district court, however, cites no evidence in support of these findings. Nor have we been able to locate any material bearing on these issues in the record.

As the district court noted, whether the procedures employed by the City comport with due process depends in part on the likelihood that the chosen method will identify potential lienholders. There are, however, no uncontested facts in the record from

---

**2.** Illinois law provides:
When a law enforcement agency authorizing the impounding of a vehicle does not know the identity of the registered owner, lienholder or other legally entitled person, that law enforcement agency will cause the vehicle registration records of the State of Illinois to be searched by the Secretary of State for the purpose of obtaining the required ownership information. 624 ILL. COMP. STAT. ANN. 5/4–205(a) (Supp.1997).

which the court could make this determination. We do not know what the probability is that a search of Illinois' Department of Transportation would reveal potential lienholders. It is not even clear why the search conducted in the instant case did not reveal Sams' lien. Oddly, neither party posits why the portion of the inquiry form concerning lienholders was "left blank," whether it was due to error on the part of the Department of Transportation or whether it was left blank because this type of search is not calculated to reveal the names of lienholders such as Sams. The City represents in its brief that a search of the Department of Transportation's records yields any information noted on a vehicle's certificate of title. The record reflects that Sams was listed as a lienholder on the Chevy Blazer's original certificate of title. Assuming the accuracy of the City's representations as to the type of information garnered by its procedures (which we note are not supported by affidavit), what went awry in the instant case remains a mystery.

■ If in fact the City's failure to notify Sams was the result of a random error in this particular search, rather than the result of a systematic deficiency in the City's method of conducting all searches, summary judgment on behalf of the City would be appropriate. To hold a municipality liable under section 1983, a plaintiff must establish that the constitutional deprivation resulted from either an official policy of the municipality or from a governmental custom or usage, even if such custom was not formally approved by the municipality. *Monell v. Department of Social Serv. of N.Y.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A plaintiff must also show that the custom or usage proximately caused the alleged unconstitutional conduct. *See Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir.1994); *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 510 (7th Cir.1993). While it is clear from the affidavit of Sergeant Ronald Kleczka of the Milwaukee Police Department that the Blazer was sold in accordance with an established procedure or custom of the City of Milwaukee, it is not evident that this procedure caused Sams' alleged constitutional deprivation.

The district court also appears to have taken the City's assertion that employing additional procedural safeguards would be burdensome at face value, and it may well be that this is the case. However, the additional burden of employing a given procedure can only be evaluated in relation to the benefit that would be derived from that procedure. It may be that a significant portion of the out-of-state vehicles towed by the City are from neighboring states such as Illinois. In that case, the benefit of routinely utilizing the procedures established by these states might outweigh any additional burden, even if the overall number of vehicles with foreign lienholders is a relatively small percentage of the total number of vehicles towed. This, of course, remains mere speculation, as the record contains nothing from which we could make this determination.

Because genuine issues of material fact exist both as to the cause of City's failure to identify Sams as a lienholder in the instant case and as to the efficacy of the City's method of searching for lienholders in general, summary judgment is not appropriate for either party on the current state of the record.[3] The judgment of the district court is REVERSED and the case REMANDED.

---

3. Sams requested in his brief that we *sua sponte* grant summary judgment in his favor.