CONSECO FINANCE SERVICING CORP., n/k/a Green Tree Servicing, L.L.C., et al., Respondents,

v.

MISSOURI DEPARTMENT OF REVENUE, Appellant.

No. SC 87061.

Supreme Court of Missouri, En Banc.

June 13, 2006.

Jeremiah W. (Jay) Nixon, Attorney General, Mark E. Long, Assistant Attorney General, Jefferson City, for appellant,

David G. Wasinger, James S. Cole, Julie Eanes, St. Louis, for respondents.

LAURA DENVIR STITH, Judge.

The issue before this Court is whether sections 700.525 to 700.541, RSMo 2000,[1] which are entitled "Abandoned Manufactured Home—Title Disposition" (the Act) and which govern issuance of titles to abandoned manufactured homes, are unconstitutional in whole or in part. Respon-

1. All statutory references are to RSMo 2000, unless otherwise indicated.

dents allege the Act is unconstitutional because its provisions are unduly vague as to what constitutes abandonment, because they provide inadequate notice or hearing prior to deprivation of the property interest of owners of manufactured homes and lienholders, and because they arbitrarily impair a lienholder's perfected security interest in a manufactured home. The trial court found these provisions invalid for the reasons asserted and enjoined Appellant, the Missouri Department of Revenue (DOR), from issuing abandoned manufactured home titles pursuant to the Act.

This Court affirms. The notice sent to Respondents was deficient because it was not reasonably calculated to reach them and was insufficient to inform them of their due process rights. Further, on its face the Act unconstitutionally fails to provide a pre-deprivation hearing to owners of manufactured homes. Having failed of its essential purpose, the Act is invalid in its entirety, and DOR is permanently enjoined from issuing certificates of title to abandoned manufactured homes pursuant to it.

## I. FACTUAL AND PROCEDURAL HISTORY

Respondents John Wren Jr. and Shannon Wren (the Wrens or homeowners) purchased a manufactured home financed by Respondent Conseco Finance Servicing Corporation (lienholder). They placed the home on land rented from Lakehurst Investments (landlord).[2] Lakehurst applied to DOR for an abandoned home title in its name, alleging the Wrens' home was abandoned pursuant to the Act.

In May 2000, DOR sent notice of Lakehurst's application for title to the Wrens at the address of the manufactured home listed on the home's title—an address that DOR had just been informed had been abandoned. Although DOR gives examples of cases in which it also has sent a copy of the notice to the lienholder, here it did not separately notify Conseco at any address or try to do so. Instead, DOR argues the following letter addressed to the Wrens at their abandoned home served as adequate notice to both:

The Motor Vehicle Bureau was notified that on October 30, 1999, the manufactured home listed above was abandoned on property owned by Lakehurst Investments Inc. at 4450 Burnau Dr Lot 90 House Springs MO. Accordingly, the Department of Revenue is required to notify the last titled owner and the lienholder(s) of record listed below of the landowner's right to obtain a title on the manufactured home, if the manufactured home is not redeemed as outlined herein.

. . . .

**THE OWNER OR LIENHOLDER MUST REDEEM THE MANUFACTURED HOME WITHIN 30 DAYS OF THIS NOTICE TO PROTECT THEIR [sic] INTEREST.**

The owner may redeem the manufactured home by presenting proof of ownership and paying all rent owed to the landowner.

The lienholder may redeem the manufactured home, if titled in Missouri, by presenting a valid security agreement to the landowner and paying all rent owed to the landowner.

---

**2.** For a more detailed discussion of the facts, see *Conseco Fin. Servicing Corp. v. Mo. Dep't of Revenue,* 98 S.W.3d 540 (Mo. banc 2003) (*Conseco I*). In this opinion, "landlord" means the owner of real property upon which a manufactured home is placed pursuant to a rental agreement, "homeowner" refers to the owner of the manufactured home, and "lienholder" refers to the holder of a security interest in the manufactured home.

The owner or lienholder must notify this department within 30 days of this notice that the manufactured home was redeemed and submit a receipt issued by the landowner showing that all rent was paid.

Failure to redeem the manufactured home and notify this department will cause the Director to issue title in the name of the landowner.

Neither the Wrens nor Conseco redeemed the title within the 30–day period, and Conseco did not learn of the claimed abandonment until after DOR issued an abandoned home title to Lakehurst. The abandoned home title did not list any security interest of Conseco or any other party in the manufactured home, although DOR concedes that Conseco's security interest was perfected prior to DOR's issuance of the abandoned home title and had been listed on the Wrens' title.

The relevant statutes and DOR regulations provide no procedure for contesting issuance of an abandoned home title or for objecting to failure to list a lienholder's security interest on that title. Conseco, therefore, sought injunctive relief to prevent DOR from issuing abandoned home titles under the Act, arguing its provisions violate Respondents' due process rights and are unconstitutionally vague.

The Wrens, although the owners of the manufactured home before it was deemed abandoned, initially were not parties to the suit. The trial court granted Conseco leave to add the Wrens as plaintiffs and that same day entered summary judgment in favor of Conseco, finding the Act to be unconstitutional because it is confiscatory and in violation of the Due Process Clause of the United States Constitution. It further found that the Act did not provide proper notice and did not give homeowners an opportunity to be heard, which deprived both homeowners and secured parties of their property interests in the manufactured homes without due process of law, and that the statutory scheme was unconstitutionally vague.

In its opinion on DOR's appeal of this decision, this Court held that DOR should have been permitted to show cause why a permanent injunction should not issue, to file an answer to the amended petition once the Wrens were added, and to conduct discovery or present evidence on the issues raised in the second amended petition, before the trial court ruled. *Conseco I,* 98 S.W.3d at 544.[3]

Upon remand, Respondents jointly argued that section 700.525's definition of "abandoned" is unconstitutionally vague and arbitrary in that it permits a finding of abandonment when the homeowner owes even a small amount of rent if the landlord asserts the home shows "indications of abandonment." They also argued that section 700.525 allows new title to issue without a pre-deprivation hearing to contest what rents are owing or whether indications of abandonment exist and that no provision is made even for a post-deprivation hearing, again violating the procedural due process rights of the homeowner in the manufactured home.

---

**3.** Further, this Court found that Conseco, not being the owner of the manufactured home, did not show it had standing to raise these issues on behalf of the Wrens or in its own right. It did not show it had an ownership interest in the home that was repossessed, and DOR denied Conseco's allegations that Conseco had a security interest in the home.

Because the trial court should have addressed standing and the other preliminary factual matters before reaching constitutional issues, the case was remanded with directions to permit DOR an opportunity to respond to and conduct discovery as to the allegations contained in the second amended petition. *Conseco I,* 98 S.W.3d at 546–47.

In addition, Conseco argued the Act is unconstitutional because to the extent the Act can be read to permit issuance of an abandoned home title to the landlord that is not subject to the lienholder's interest, it deprives the lienholder of a security interest in the manufactured home without adequate notice. Even if the landlord takes the home subject to the lienholder's interest, DOR does not reflect that interest nor does the statute require it to be reflected on the abandoned home title issued by DOR. Moreover, even were its interest reflected on the title, Conseco argued, the statutory procedure may impair the lienholder's security interest by leaving the debt in the name of the debtor while transferring ownership to the landlord, arguably denying it the ability to proceed against the landlord under section 400.9–203, RSMo Supp.2005.

The trial court granted the motion for summary judgment and request for injunctive relief, finding the Act unconstitutional as to both the Wrens and Conseco because it is confiscatory and violates the Due Process Clause on its face and as applied, and is unconstitutionally vague. The court issued a permanent injunction prohibiting DOR from issuing titles on abandoned manufactured homes pursuant to sections 700.525 to 700.541.[4] DOR appeals. This Court affirms.

## II. STANDARD OF REVIEW

■■■ Summary judgment is proper only where there is no issue of material fact and a party is entitled to judgment as a matter of law. Here, the issue is one of statutory interpretation, which is an issue of law. This Court, therefore, reviews the grant of summary judgment *de novo*. *Ochoa v. Ochoa*, 71 S.W.3d 593, 595 (Mo.

banc 2002); *Dial v. Lathrop R–II Sch. Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994). In reaching a decision, this Court presumes that a statute is constitutional. *In re Marriage of Kohring*, 999 S.W.2d 228, 231 (Mo. banc 1999). It will not be invalidated "unless it clearly and undoubtedly contravenes the constitution and plainly and palpably affronts fundamental law embodied in the constitution." *Id.*

## III. CONSTITUTIONALITY OF THE MANUFACTURED HOMES ACT

*A. Vagueness of Definition of "Abandoned."*

The Act allows a landowner to obtain title to an abandoned manufactured home under section 700.525, which defines "abandoned" as the homeowner's "physical absence from the property," and either:

(a) Failure by a renter of real property to pay any required rent for fifteen consecutive days, along with the discontinuation of utility service to the rented property for such period; *or*

(b) *Indication of or notice of abandonment* of real property rented from a landlord;

(emphasis added). Plaintiffs argue that section 700.525's definition of "abandoned" is so vague and ambiguous as to be unconstitutional because it is not susceptible to any reasonable or practical construction. The definition of "abandoned" in paragraph (a), it notes, would permit a home to be found to be abandoned if the homeowner failed to pay rent before taking a two-week vacation during which the utilities were turned off. The definition in paragraph (b) would allow a landlord to use its own imagination to come up with indications of abandonment. They argue

---

**4.** Appellants also challenge whether the trial court properly could find that it violated Respondents' rights under 42 U.S.C. section 1983 if the Act is not unconstitutional. As this Court finds the Act is unconstitutional, it does not reach that issue.

that one can foresee that if homeowners failed to live in a home for a period because of storm or flood damage or due to illness or otherwise, the homeowners could return to find their home belonged to another.

■ DOR argues that the Wrens and Conseco have no standing to bring a vagueness challenge because, while the Act's definition may be open-ended, neither claims they could not understand the Act nor that they did not understand that it applied to the Wrens. This Court agrees. "Vagueness, as a due process violation, takes two forms." *State v. Young,* 695 S.W.2d 882, 884 (Mo. banc 1985). "One is the lack of notice given a potential offender because the statute is so unclear that '[persons] of common intelligence must necessarily guess at its meaning.'" *Id.,* quoting, *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "The second is that the vagueness doctrine assures that guidance, through explicit standards, will be afforded to those who must apply the statute, avoiding possible arbitrary and discriminatory application." *Young,* 695 S.W.2d at 884, *citing, Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ While the amorphous and open-ended nature of the definition of "abandoned," particularly as to section 700.525(b), renders it vulnerable to a vagueness challenge by persons alleging the statute did not give them adequate notice that their conduct would constitute abandonment, a vagueness challenge will not be sustained on hypothetical facts. *State v. Self,* 155 S.W.3d 756, 760–61 (Mo. banc 2005). The record is silent as to whether Lakehurst relied on paragraph (a) or paragraph (b), and neither the Wrens

nor Conseco allege they were confused or misled by the statute's definition of "abandoned," or that the Wrens did not, in fact, abandon the home. Accordingly, plaintiffs have no standing to raise this issue.[5]

*B. Notice Provisions of the Act Do Not Provide Due Process.*

■ Conseco and the Wrens alternatively argue that the notice was constitutionally deficient in that it was not reasonably calculated to give actual notice to either the Wrens or Conseco. Both the Missouri and United States constitutions prohibit states from depriving persons of property without due process. U.S. Const. amend. 14; Mo. Const. art. I, sec. 10. "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (internal quotations omitted). This due process right to notice applies to those with security interests as well as those who are in possession of the property. *See e.g., Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798–99, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (mortgagee had right to notice before deprivation of security interest by tax sale); *Sams v. City of Milwaukee, Wis.,* 117 F.3d 991, 993–94 (7th Cir.1997) (notice given to entity with security interest in automobiles); *Ford Motor Credit Co. v. N.Y. City Police Department,* 394 F.Supp.2d 600, 615, 617–19 (S.D.N.Y.2005) (lender who did not receive notice of sale and so could not protect interest in proceeds had action against buyer for proceeds).

---

5. Given this Court's resolution of the other constitutional issues raised, it is not appropriate to consider remand for further discovery on the standing issue.

DOR does not contest that the Wrens and Conseco both had a constitutional right to adequate notice before being deprived of their property rights, nor that the Wrens' property rights in the manufactured home would be defeated if the landlord were successful in claiming abandonment and obtaining title to it. Neither does it contest that Conseco had a property interest in the manufactured home that DOR did not reflect on the abandoned manufactured home title DOR issued to Lakehurst. Moreover, it is indisputable that section 700.531 makes it the specific obligation of DOR to notify both the homeowner and the lienholder of the alleged abandonment of the home and the landlord's application for title. Both parties clearly were entitled to adequate notice. Respondents contend that the notice provided by DOR was inadequate.

■■ To give meaning to the concept of notice, due process requires notice "reasonably calculated, under all the circumstances" to reach the person whose rights are affected. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). While what constitutes sufficient notice may vary, "if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests." *Walker v. City of Hutchinson, Kan.*, 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956).

■ DOR sent the notice to the Wrens' manufactured home address. It acknowledges that, inasmuch as the reason it sent the notice was that it had been informed by the landlord that the Wrens had abandoned that home, it was sending the notice to an address where it had been told the Wrens no longer lived. Further, it does not claim it thought Conseco maintained offices in the Wrens' allegedly abandoned

manufactured home and acknowledges it did not send a separate notice of abandonment to Conseco in this case (although it alleges it does send a separate notice to the lienholder if the homeowner has listed the lienholder's address on the title). An affidavit filed below also indicates that in some cases DOR sends notice by certified mail, although in this instance it is not claimed that certified mail delivery was attempted.

DOR argues that because it mailed the notice to the address the Wrens had listed on the title, the notice automatically should be held to be "reasonably calculated" to reach the Wrens and Conseco and so satisfy due process. The United States Supreme Court has repeatedly rejected arguments similar to those made by DOR.

In *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), appellant was arrested and taken into custody. As the state held him in custody, it necessarily was aware he was not living at his home. It nonetheless initiated forfeiture proceedings against his automobile and mailed notice of the proceedings to his home. He did not receive the notice and the automobile was forfeited. He later contested the forfeiture. *Robinson* held that because "the State knew that appellant was not at the address to which the notice was mailed," the mailed notice did not constitute an effort to provide notice "reasonably calculated" to reach the affected party, even though appellant failed to comply with a legal obligation to provide an updated address. *Id.* at 38–40.

*Robinson* was reaffirmed and extended earlier this year in *Jones v. Flowers*, —— U.S. ——, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). In *Jones*, the state sent notice of a tax sale of petitioner's property by certified mail to the address in question. The notice was returned unclaimed. The state made no further attempt to provide notice

to Jones either by regular mail or by seeking out another address or means of notice. Jones did not learn of the tax sale until the state had sold the property and Jones' daughter, who was living in the home, received an unlawful detainer notice delivered to the property. Jones filed suit to set aside the sale. The lower courts found that notice by certified mail was sufficient.

The United States Supreme Court reversed. In an opinion by Chief Justice Roberts, it said that the obligation to give notice reasonably calculated to reach the affected parties does not end with sending a letter if the sender learns the letter was not received. The constitution requires notice reasonably calculated to reach the party, and, "[u]nder *Robinson* ... the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice." *Jones*, 126 S.Ct. at 1716.

Further, *Jones* reaffirmed the commonsense teaching in *Mullane* that, "*when notice is a person's due ... [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.*" *Jones*, 126 S.Ct. at 1721, *quoting, Mullane,* 339 U.S. at 315, 70 S.Ct. 652 (emphasis

added). Applying that reasoning to the case before it, *Jones* stated:

> We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed.... In *Robinson v. Hanrahan*, we held that notice of forfeiture proceedings sent to a vehicle owner's home address was inadequate when the State knew that the property owner was in prison.

*Id.,* 126 S.Ct. at 1716. *Jones* concluded that the government's knowledge that notice was ineffective triggered an obligation to take additional steps, if practicable, to effect notice.

Applying these standards here, to paraphrase *Jones,* we do not think that a person who actually desired to inform a homeowner or lienholder of an impending finding of abandonment and issuance of an abandoned home title not reflecting the lienholder's interest would send a single notice by regular mail to an address believed was abandoned. The notice here did not meet DOR's notice obligation as to the Wrens and Conseco under section 700.531 or its constitutional obligation to provide adequate notice to the Wrens before depriving them of their property interest in the manufactured home.[6]

6. The parties' positions have varied concerning the effect of the lack of notice or of transfer of title on Conseco's lien rights. Pointing to section 700.535, Conseco says the statute permits it to be deprived of its security interest just by failing to redeem the home or pay rents due within 30 days, with silence being taken as a waiver of its rights. DOR seemed to so interpret the statute in the early phases of this litigation, leading to this Court's caution in *Conseco I* that "serious constitutional issues would be raised were [the Act] construed to destroy a secured party's ability to retain a perfected security interest without adequate notice and other necessary process." 98 S.W.3d at 545.

But, DOR seems to concede at oral argument that section 700.535 cannot be read this way in light of section 700.527's specific statement that a landlord who seeks possession of the home under the Act does so "subject to the interest of any party with a security interest in the manufactured home," and section 700.530's express provision that the Act "shall not affect the right of a secured party to take possession of, and title to, a manufactured home pursuant to section 400.9–503, RSMo, section 700.386 *or otherwise as allowed by contract or law*" (emphasis added). Although Conseco argues its rights still might be impaired by the Act even if the landlord

DOR argues it had no address for the Wrens other than the one listed on the title. As *Jones* also reaffirmed:

> [I]t is not our responsibility to prescribe the form of service that the [government] should adopt ... we have not attempted to redraft the State's notice statute. [citations omitted]. The State can determine how to proceed in response to our conclusion that notice was inadequate here ... It suffices for present purposes that we are confident that additional reasonable steps were available for Arkansas to employ before taking Jones' property.

*Jones,* 126 S.Ct. at 1721 (internal quotations and citations omitted). *Accord, Greene v. Lindsey,* 456 U.S. 444, 455 n. 9, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). It suffices to note that there were several steps DOR could have taken that would have been more reasonably calculated to actually reach the Wrens[7] and Conseco.[8] While what alternatives are sufficient necessarily will vary, what will not vary is that under *Robinson, Jones,* and similar cases, the State must use efforts reasonably calculated to reach the affected parties. DOR's single attempt to send a letter to an address it believed abandoned did not meet this standard.

*C. Lack of Requirement of Pre–Deprivation Hearing.*

 Respondents also argue that, even had they timely received notice, the Act is unconstitutional on its face because it fails to provide for a pre-deprivation hearing and fails to require sufficient information in the notice to allow the Wrens to protect their property interests. The Act's notice requirements are very limited: the director of revenue must notify the homeowner and lienholder of the manufactured home's "status of abandonment, the name and business address of the landlord seeking possession of the manufactured home, and the right of the landlord to seek title to the manufactured home," sec. 700.531,

---

took title subject to its interest and that interest were reflected on the manufactured home title, its claims of harm are too speculative and hypothetical at this junction to merit further discussion.

7. In the case of the Wrens, this may have included posting the notice on the door to the abandoned manufactured home, sending the notice by another form of mail, sending the notice to the mobile home park landlord with a request to forward it, attempting to obtain another address for the Wrens from state records, or even publishing the notice if no better method was identified. *Jones,* 126 S.Ct. at 1720, *quoting, Mullane,* 339 U.S. at 317, 70 S.Ct. 652 ("[N]otice by publication is adequate only where 'it is not reasonably possible or practicable to give [a] more adequate warning' "). True, DOR's job would have been easier had the Wrens updated the address on their title. But, a person's failure to update his or her address "does not relieve the State of its constitutional obligation" to provide notice reasonably calculated to reach the homeowner. *Mennonite,* 462 U.S. at 799, 103 S.Ct. 2706.

8. As to Conseco, the record indicates it had properly perfected its security interest in the home by filing with the secretary of state. Its address was readily available to DOR. Indeed, one purpose of filing a security interest with the secretary of state is to give notice of the lienholder's interest so that it can be protected. *See First Nat'l Bank of Steeleville, N.A. v. Erb Equip. Co., Inc.,* 921 S.W.2d 57, 62 (Mo. App. E.D.1996) ("The requirements of the UCC concerning filing, notice and perfection all are intended to provide to those dealing with commercial activities knowledge of the status of the commodity with which they are dealing so that they may protect their interest and act in a commercially prudent manner"). *See also* sections 400.9–302, 700.350–360. The record further shows that DOR did send notices actually addressed to Conseco's business before issuing abandoned manufactured home titles to landlords in other cases of alleged abandonment but made no attempt to mail notice directly to Conseco here.

unless the homeowner or lienholder "[fails] to respond to the notice required by section 700.531 within thirty days of the mailing or delivery of such notice by the director of revenue." Sec. 700.535.

To prevent issuance of an abandoned home title, the homeowner or lienholder must offer proof of ownership and payment of all reasonable rents due the landlord. Sec. 700.533, 700.535. But, the statutes do not require the homeowner or lienholder to be informed as to what rents are alleged to be due, much less do they provide any means for the homeowner to obtain a pre-deprivation, or indeed even a post-deprivation, hearing to contest the rents alleged to be due or even the basic allegations of abandonment. If DOR receives no response to its notice within 30 days, the home is automatically deemed abandoned, and an abandoned home title will issue to the landlord.

Further, even could it do so absent a statutory requirement of notice and hearing, DOR never attempted to rectify the due process inadequacies in the statute by issuing regulations requiring adequate notice or a pre-deprivation hearing for the homeowner, although section 700.541 provides that the director of revenue may promulgate rules to effectuate the provisions of the Act. And, the letter sent to the Wrens here did not provide such notice. In relevant part, it stated only that:

**THE OWNER OR LIENHOLDER MUST REDEEM THE MANUFACTURED HOME WITHIN 30 DAYS OF THIS NOTICE TO PROTECT THEIR [sic] INTEREST.**

The owner may redeem the manufactured home by presenting proof of ownership and paying all rent owed to the landowner.

The lienholder may redeem the manufactured home, if titled in Missouri, by presenting a valid security agreement to the landowner and paying all rent owed to the landowner.

The owner or lienholder must notify this department within 30 days of this notice that the manufactured home was redeemed and submit a receipt issued by the landowner showing that all rent was paid.

Failure to redeem the manufactured home and notify this department will cause the Director to issue title in the name of the landowner.

DOR claims that, even if the Act does not expressly state that a party can seek a hearing to prevent loss of the home or to contest abandonment or rents due, those affected are presumed to know that they can seek injunctive relief under section 536.150 to prevent property loss, as occurred here once the parties finally learned the home had been deemed abandoned and an abandoned home title issued to Lakehurst.

Section 536.150 is not a substitute for a pre-deprivation hearing. On its face it does not provide for a hearing prior to deprivation nor does it provide notice to homeowners of how to protect their rights. It merely provides that a party may seek review of administrative action taken without a hearing and for which no other means of review is provided if the person alleges the action was unconstitutional, unlawful, unreasonable, arbitrary, or capricious, stating:

When any administrative officer or body ... shall have rendered a decision which is not subject to administrative review, determining the legal rights ... of any person, ... and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari,

mandamus, prohibition or other appropriate action . . .

Sec. 536.150.

In citing section 536.150, DOR in effect is arguing that because Missouri statutes provide the homeowner with a mechanism for seeking post-deprivation equitable relief, no other process is due. But, no administrative deprivation could ever violate due process if such an argument were accepted, for by definition section 536.150 always applies when no other means of review is given. In any event, it long has been recognized that the mere right to seek a post-deprivation hearing or to obtain damages after the fact for a wrongful deprivation of property does not satisfy due process:

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, [possessions can be returned] if they were unfairly or mistakenly taken in the first place. Damages may even be awarded . . . for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.

*Fuentes*, 407 U.S. at 81–82, 92 S.Ct. 1983 (quotations omitted). Indeed, the United States Supreme Court has noted that the type of injunctive relief suggested by DOR is improper because:

> Equitable remedies are particularly unsuited to the resolution of factual disputes typically involving sums of money too small to justify engaging counsel or bringing a lawsuit. An action in equity to halt [improper action], because it is less likely to be pursued and less likely to be effective, even if pursued, will not provide the same assurance of accurate decisionmaking as would an adequate administrative procedure. In these circumstances, an informal administrative remedy . . . constitutes the process that is due.

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 21–22, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).[9]

■■■■ For these reasons, "an individual [must] be given an opportunity for a hearing *before* [he or she] is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Fuentes*, 407 U.S. at 82, 92 S.Ct. 1983 (internal quotations omitted, emphasis added).[10] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotations omitted). The Wrens were entitled to a hearing before their property interests were disturbed. Without a pre-deprivation hearing, they were not given an op-

---

**9.** Other cases recognize that the fact plaintiffs could seek injunctive relief is not a substitute for a pre-deprivation hearing. *See, e.g., Young v. Brashears*, 560 F.2d 1337 (7th Cir. 1977); *Klein v. Califano*, 586 F.2d 250 (3d Cir.1978); *Reardon v. U.S.*, 947 F.2d 1509 (1st Cir.1991); *Skeets v. Johnson*, 805 F.2d 767 (8th Cir.1986).

**10.** It is not suggested, nor could it be, that such extraordinary circumstances justify dispensing with pre-deprivation notice of the issuance of an abandoned home title to a manufactured home. *See, e.g., Bowles v. Willingham*, 321 U.S. 503, 519–21, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (extraordinary circumstances include times of war or when national security is at stake).

portunity to be heard at a meaningful time and in a meaningful manner.

## IV. CONCLUSION

For these reasons, this Court finds the Act violates the due process rights of homeowners because it deprives them of their property interests in manufactured homes without adequate notice or opportunity for hearing and as to Conseco because the notice provided was inadequate to allow it to protect its interests. As issuance of abandoned home titles is the sole purpose of the Act, nothing is left to be enforced in light of the invalidity of the Act's notice and hearing provisions.[11] Accordingly, the trial court's judgment is affirmed.

All concur.

---

11. *See generally* section 1.140; *Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824, 832 (Mo. banc 1990) (in determining severability court will look at whether remaining sections can be given effect or meaning absent unconstitutional ones).