

## SUPREME COURT OF MISSOURI
### en banc

BLACK RIVER MOTEL, LLC, ET Al.,      )
         )
       Appellants,        )
         )
v.                           )           No. SC99567
         )
PATRIOTS BANK,             )
         )
       Respondent.       )

*Opinion issued June 13, 2023*

### APPEAL FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
### The Honorable Brice R. Sechrest, Judge

Patriots Bank ("Bank") filed a petition seeking the appointment of a receiver, pursuant to the Missouri Commercial Receivership Act ("MCRA"),[1] for Black River Motel, LLC; CHAB Development, LLC; CRAZ Investments, LLC; and Jonesburg Sawmill & Pallet Co., Inc. (collectively "Appellants"). After the circuit court entered an order appointing a receiver ("receiver order"), Appellants filed a motion to vacate, which was overruled.

Appellants now appeal the circuit court's order overruling their motion to vacate the receiver order, alleging the circuit court erred because Bank's application under the MCRA violated due process. Appellants argue they did not receive notice or an

---

[1] Sections 515.500-515.665, RSMo 2016.

opportunity to be heard before the receiver order was entered. Appellants also aver the circuit court erred because: (1) Bank did not comply with the MCRA notice requirement; (2) the circuit court, in overruling Appellants' motion to vacate, considered facts and circumstances that occurred after it entered the receiver order; (3) a receiver was not necessary; and (4) the receiver order contravenes the MCRA.

The MCRA, as applied in this case, effected a constitutional accommodation of all parties' interests, affording Appellants adequate due process. Bank complied with the MCRA notice requirement because Appellants received notice of the application for a receiver seven days before the circuit court's receiver order. Further, in overruling Appellants' motion to vacate, there is no evidence the circuit court considered facts and circumstances that occurred after the receiver order. Finally, the receiver order does not violate the MCRA. The circuit court's order is affirmed.

**Background**

Bank entered into lending relationships with Appellants between June 2016 and November 2019.[2] Black River Motel owns and operates a six-bedroom motel in Lesterville and leases space to a restaurant and bar. CHAB Development is a holding company that owns numerous aircraft in which Bank held security interests as well as real estate. Jonesburg Sawmill & Pallet Co. owns and operates a sawmill with related equipment, warehouses, inventory and rolling stock. CRAZ Investments owns five acres of land upon which it operates a charcoal manufacturing plant and an additional 321 acres

---

[2] Chris and Regina Harbison are the principals and owners of each Appellant.

of land located in Cade. Each Appellant had distinct lending relationships with Bank involving separate instruments under which Bank issued separate loans to each Appellant, and each Appellant granted Bank separate liens and security interests in real or personal property owned by each Appellant.

In April 2021, Bank sent letters to Appellants notifying each of them of defaults under the applicable loan documents and advising them of the actions necessary to cure such defaults and the accompanying deadlines. After Appellants failed to cure the defaults, Bank sent a letter to Appellants' counsel on June 10, notifying Appellants that they were each in default and the indebtedness owed was accelerated such that all amounts were immediately due. Appellants, however, made no payments, and each Appellant remains in default.

On July 7, Bank filed a verified petition seeking the appointment of a receiver for Appellants under the MCRA. Shortly thereafter, on July 13, Bank filed an emergency motion for appointment of a receiver, requesting the circuit court find good cause to shorten the seven-day notice requirement, pursuant to section 515.510.3, and immediately appoint a receiver, but the circuit court did not rule on the motion at the time. On July 15, each Appellant was served with summons, the petition, and the emergency motion. Seven days later, on July 22, the circuit court entered the receiver order. During the seven days between service on Appellants and the receiver order, Appellants did not file an objection, request a hearing, or take any other action in the pending case.[3]

_____

[3] Appellants did not appear in the case until July 27.

3

Appellants filed a motion to amend the receiver order on August 16 and filed a subsequent motion to vacate the receiver order on September 6, each challenging, *inter alia*, the constitutional validity of the receiver order.[4] In October, Bank filed a second motion for appointment of a receiver, asserting that, if Appellants' motion to vacate was sustained, Appellants' actions following the first receiver order justify that a receiver should be appointed. Following hearings on Appellants' motions and Bank's motion, the circuit court entered an order April 1, 2022, overruling Appellants' motion to vacate and overruling Bank's second motion to appoint a receiver as moot. Appellants appeal the circuit court's April 1 order, challenging, in part, the constitutional validity of the MCRA as applied in this case. They argue it violates due process protections under both the Missouri and United States constitutions by authorizing an order appointing a receiver without notice or an opportunity to be heard.[5] Because Appellants challenge the

---

[4] Initially, when Appellants filed the motion to amend the receiver order, they also filed a notice of hearing indicating they would call up for hearing the motion to amend the receiver order on August 18 or as soon as possible thereafter. Bank requested a continuance, which was granted. The circuit court scheduled the hearing for August 31, and Appellants then requested a continuance. The parties agreed to a hearing on the merits of Appellants' motion to amend the receiver order and motion to vacate the receiver order on November 8 (with November 12 also reserved if needed). The circuit court also held a hearing on Bank's second motion to appoint a receiver on January 5 and 7, 2022.

[5] The circuit court's order overruling Appellants' motion to vacate the appointment of a receiver is appealable. *Meadowfresh Solutions USA, LLC v. Maple Grove Farms, LLC*, 578 S.W.3d 758, 762 (Mo. banc 2019).

constitutional validity of a state statute, this Court has exclusive appellate jurisdiction.[6]

Mo. Const. art. V, section 3.

## I.     MCRA Section 515.510.3

Appellants argue Bank did not comply with section 515.510.3 of the MCRA.

Section 515.510.3 provides:

> **At least seven days' notice of any application for the appointment of a receiver shall be given to the debtor and to all other parties to the action in which the request for appointment of a receiver is sought, and to all other parties in interest as the court may require.** If any execution by a judgment creditor or any application by a judgment creditor for the appointment of a receiver with respect to property over which the appointment of a receiver is sought is pending in any other action at the time the application is made, then notice of the application for the receiver's appointment also shall be given to the judgment creditor in the other action. **The court may shorten or expand the period for notice of an application for the appointment of a receiver upon good cause shown.**

(Emphasis added).

### Standard of Review

Statutory interpretation is a question of law, which is reviewed *de novo*. *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014). "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Id.* This Court will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result. *Id.*

---

[6] This Court has jurisdiction over all other issues raised because once jurisdiction attaches, it extends to all issues in the case. *Estate of Austin v. Snead*, 389 S.W.3d 168, 170 n.9 (Mo. banc 2013).

**Analysis**

Appellants posit that although section 515.510.3 allows a circuit court to shorten the requisite notice period upon a finding of good cause, it does not permit a circuit court to dispense with the notice requirement altogether. Though they received a copy of the petition and emergency motion, Appellants contend such notice was insufficient because the purpose of requiring notice is to inform a party that they have an opportunity to be heard. Because Appellants did not receive notice *of a hearing*, they argue Bank did not provide adequate notice pursuant to section 515.510.3. But the plain language of that section requires nothing more than "[a]t least seven days' notice *of any application for the appointment of a receiver*." Section 515.510.3 (emphasis added). Nothing in the statute indicates that notice *of an opportunity for a hearing* must be provided. *Li Lin v. Ellis*, 594 S.W.3d 238, 244 (internal citation omitted) (This Court "cannot 'add statutory language where it does not exist'; rather, [the Court] must interpret 'the statutory language as written by the legislature.'"). It is undisputed that Appellants were served with summons, the petition, and the emergency motion on July 15, 2021—seven days prior to the receiver order on July 22. Because Bank complied with the plain language of the MCRA's notice requirement, Appellants' argument does not warrant relief.

**II.    Due Process**

Appellants contend the application of the MCRA to Appellants' case violated the due process protections under the Missouri and United States constitutions.

**Standard of Review**

The challenge to the constitutional validity of a statute is subject to *de novo* review. *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 637 (Mo. banc 2012). A statute is presumed valid and will be found constitutional "unless it clearly contravenes a constitutional provision." *Id.* The party challenging the statute's constitutional validity has the burden of proving the statute "clearly and undoubtedly" violates the constitution. *Id.* An as-applied challenge requires Appellants to show the statute was unconstitutionally applied to their individual circumstances. *See Bennett v. St. Louis Cnty.*, 542 S.W.3d 392, 397 (Mo. App. 2017).

**Analysis**

Appellants argue, because the circuit court entered the receiver order without Appellants receiving notice and an opportunity to be heard, they were denied due process. The due process clauses of the United States and Missouri constitutions prohibit the taking of life, liberty, or property without due process of law. U.S. Const. amend. XIV, sec. 1; Mo. Const. art. I, sec. 10. "[D]ue process requires notice and the opportunity to be heard." *Strup v. Dir. of Revenue*, 311 S.W.3d 793, 796 (Mo. banc 2010). But "[t]he requirements of due process of law are not technical, nor is any particular form of procedure necessary." *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 610 (1974) (internal quotation omitted). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.* (internal quotation omitted).

Appellants assert "notice that a property right may be abridged" is the cornerstone of due process and, if the MCRA notice requirement can be eliminated altogether, as they allege it was in this case, then the MCRA is unconstitutional as applied here. But, as already noted, it is undisputed Appellants were given notice when they were served with a copy of the petition and the emergency motion. The petition and emergency motion, which sought the appointment of a receiver, apprised Appellants that a property right may be abridged. Accordingly, the issue is whether the receiver order violated due process when it was entered without a pre-deprivation hearing.

Although due process principles typically require a hearing before a person may be deprived of their property, a pre-deprivation hearing is not required in all instances because due process is a flexible concept. *Mitchell*, 416 U.S. at 610. In *Mitchell*, the United States Supreme Court held a statute allowing a creditor a writ of sequestration to forestall waste or alienation of encumbered property, without the debtor receiving notice or a pre-deprivation hearing, did not violate due process. *Id.* at 601, 610. In particular, *Mitchell* found the sequestration procedure at issue in that case effected a constitutional accommodation of the respective interests of the creditor and debtor. *Id.* at 610. The Supreme Court observed that this was "not a case where the property sequestered by the court [was] exclusively the property of the defendant debtor." *Id.* at 604. Instead, the Supreme Court found that the "[r]esolution of the due process question must take account not only of the interests of the buyer of the property but those of the seller as well." *Id.* *Mitchell* first considered that "if payments cease and possession and use by the buyer continue, the seller's interest in the property as security is steadily and irretrievably

8

eroded until the time at which [a] full hearing is held." *Id.* at 608. *Mitchell* also considered that there was a "real risk that the buyer, with possession and power over the goods, will conceal or transfer the merchandise to the damage of the seller." *Id.* at 608-09. On balance, the Supreme Court observed the writ would issue only upon sworn documents and noted the debtor had the opportunity for a post-deprivation hearing. *Id.* at 609. Further, the Supreme Court addressed its prior cases appearing to hold due process requires a pre-deprivation hearing, clarifying those cases "merely stand for the proposition that a hearing must be had before one is *finally* deprived of [] property and do not deal at all with the need for a pretermination hearing where a full and immediate post-termination hearing is provided."[7] *Id.* at 611 (emphasis added). For these reasons, *Mitchell* held Louisiana's statutory procedure effected a constitutional accommodation of the conflicting interests of the parties.[8] *Id.* at 607.

---

[7] In *Conseco Financial Services Corp. v. Missouri Department of Revenue*, 195 S.W.3d 410 (Mo. banc 2006), this Court considered a statutory scheme involving the final deprivation of title to abandoned manufactured homes without a pre-deprivation hearing. There, an owner of a manufactured home placed the home on property rented from landlords. *Id.* at 412. The manufactured home owner challenged the statutory scheme, which allowed the landlords to seek title to the manufactured home if such was abandoned and rent was overdue. *Id.* at 414. The owner claimed the statute violated the owner's due process rights, as it did not provide for a pre-deprivation hearing. *Id.* at 418. This Court agreed, holding "an individual must be given an opportunity for a hearing *before* he or she is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 420 (alterations omitted). *Conseco* relied on *Fuentes v. Shevin,* 407 U.S. 67 (1972), which was subsequently modified by *Mitchell*. Furthermore, *Conseco* is distinguishable from the instant case in that the landlords did not have a previous interest in the manufactured home as Bank does in Appellants' collateral here. *Conseco* is not controlling.
[8] After the United States Supreme Court handed down *Mitchell*, it set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), a balancing test for procedural due process claims when

9

Likewise, the circuit court's application of the MCRA here effected a constitutional accommodation of the parties' conflicting interests. In this case, there were risks similar to those identified in *Mitchell*. Payments to Bank ceased, but possession and use of the property by Appellants continued; at the same time, Bank's interest in the property as security was steadily and irretrievably eroding. There also was a real risk that Appellants, with possession and power over the goods, could conceal or transfer the collateral to the damage of Bank.[9] On balance, the circuit court ordered the appointment

the government itself seeks to effect a deprivation on its own accord. The *Mathews* balancing test was subsequently modified in *Connecticut v. Doehr*, 501 U.S. 1 (1991), to address due process claims arising when a private party "enlist[s] the aid of the State to deprive another of his or her property by means of prejudgment attachment or similar procedure." *Id.* at 9 (The threefold inquiry includes: (1) consideration of the private interest that will be affected by the prejudgment measure; (2) an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and (3) principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.). While *Mitchell* preceded *Mathews* and *Doehr*, the balancing in *Mitchell* is like the modified *Mathews* test provided in *Doehr*. *Id.* at 16 (discussing *Mitchell*). Indeed, *Mitchell* compared the competing parties' interest in the property and considered the statutory safeguards to prevent error. 416 U.S. at 609-10. Here, *Mitchell*'s balancing of interests is instructive, as it is the most factually analogous to the instant case. To the contrary, *Doehr* involved a tort creditor who did not have a pre-existing interest in the property at issue. 501 U.S. at 16. *Doehr* itself recognized the differences between its facts and *Mitchell*. *Id.* ("Yet there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action during the pendency of the action that would render his real estate unavailable to satisfy a judgment. Our cases have recognized such a properly supported claim would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected.").

[9] Bank presented evidence that Appellants impermissibly sold collateral.

of a receiver upon sworn documents from Bank demonstrating the necessity of a receiver. In addition, the circuit court held a post-appointment hearing on the merits of the receiver order at which Appellants had the opportunity to be heard. What is more, before the receiver can sell receivership property—finally depriving Appellants of their interest in receivership property—the MCRA and the receiver order require court approval, notice, and a hearing. Section 515.545(10); Section 515.645.1. Though Appellants did not have a pre-deprivation hearing, the MCRA, as applied here, constitutionally accommodated the conflicting interests of all parties and provided Appellants with adequate due process.

### III.    Motion to Vacate Receiver Order

Appellants also argue the circuit court abused its discretion in overruling their motion to vacate the receiver order.

### Standard of Review

The appointment of a receiver is within the circuit court's discretion. *Riegel v. Jungerman*, 597 S.W.3d 695, 702 (Mo. App 2019). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.*

### Analysis

Appellants aver the circuit court abused its discretion in overruling their motion because it considered post-appointment events rather than the evidence and

11

circumstances present at the time it entered the receiver order.[10]  Appellants cite the

circuit court's April 1 order stating that "multiple grounds **now** exist, and **continue to**

**exist** for the appointment" as evidence that the circuit court considered post-appointment

facts in overruling their motion to vacate.  Bank argues there is no support for

Appellants' contention the circuit court considered post-appointment events; rather,

Appellants misrepresent the April 1 order by "nitpicking" a particular phrase out of

context.  This Court agrees.

The circuit court's order states: "The Defendant's Motion to Vacate Receivership

is DENIED."  The circuit court did not expound as to its reasoning.  The order then

separately stated:

> "The Receiver's Second Motion to Appoint Receiver is DENIED as moot."
> "However, *the Court finds that multiple grounds now exist, and continue to
> exist*, for the appointment of a receiver for each of the Defendant entities.
> Therefore, even if the Defendant's Motion to Vacate Receivership had been
> granted, the Reciever's Second Motion to Appoint Receiver would have been
> granted in its entirety … ."

(Emphasis added).  Considering the order in its entirety, it is clear Appellants "nitpicked"

the circuit court's statement relating to its decision on Bank's second motion to appoint a

receiver and took the statement out of context, misrepresenting the order.  Instead, the

circuit court summarily overruled Appellants' motion to vacate the receiver order.  There

---

[10] Appellants also argue the circuit court abused its discretion in that it did not issue
findings of fact in its July 22, 2021, receiver order or April 1, 2022, order.  Appellants'
argument lacks merit.  Pursuant to Rule 73.01(c), they were required to request findings
of fact before the admission of evidence.  Appellants failed to make such requests.

12

is no evidence supporting Appellants' contention that the circuit court considered post-appointment events in its decision.[11]  Appellants' argument lacks merit.

Appellants next contend the circuit court abused its discretion in overruling their motion to vacate the receiver order in that there was no evidence a receiver was necessary.  Appellants note the MCRA permits a circuit court to appoint a receiver only when "such appointment shall be deemed necessary."  Section 515.510.1.  Section 515.510.1 lists 14 instances when a court has the power to appoint a receiver.  Citing *Bushman v. Bushman*, 279 S.W. 122 (Mo. banc 1925), however, Appellants posit a receiver is necessary only when three "cardinal conditions" exist prior to appointment of a receiver.[12]  Appellants aver Bank failed to present evidence of the existence of such conditions.  Bank agrees the appointment of a receiver must be necessary; however, it asserts section 515.510.1 controls and any "cardinal conditions" are irrelevant.  This Court agrees.  *Bushman* involved the appointment of a receiver pursuant to the statute existent at that time.  279 S.W. at 125 ("That power [to appoint a receiver] is inherent and in this jurisdiction has been given legislative sanction. Section 1449, R. S. 1919.").  The

---

[11] Further, as Bank notes, the hearing transcript from November 8 and 12 reflects the evidence presented on the motion to vacate included facts and circumstances as they existed at the time the receiver was appointed.  At such hearings, Bank's counsel noted: "And so the real question is this, was the appointment of a receiver justified when we asked for one on July 7th. The answer is absolutely yes. The answer is really that the Defendants gave the bank no other choice but to seek the appointment of a general receiver."

[12] "These cardinal conditions are: (1) The deterioration or waste of the property; (2) the insolvency of the defendant; and (3) a reasonable probability that the plaintiff will prevail on the merits." *Bushman*, 279 S.W. at 125.

13

requisite circumstances for appointing a receiver pursuant to that 1919 statute in *Bushman* are irrelevant. Instead, according to the plain language of section 515.510.1, in the event one of the listed instances exists—without more—the circuit court may appoint a receiver. Bank alleged a receiver was necessary pursuant to subdivisions (2)(a), (2)(c), (7), (9), (13), and (14) of section 515.510.1. And, at the post-appointment hearing, Bank did, in fact, provide evidence supporting multiple grounds under section 515.510.1. For example, section 515.510.1(7) provides a receiver is necessary when property is in "danger of waste, impairment, or destruction or where the debtor has absconded with, secreted, or abandoned the property …." At the November hearings, Bank introduced evidence that Appellants impermissibly sold a plane that served as collateral for a loan and failed to remit the proceeds to Bank. Additionally, section 515.510.1(9) provides a receiver is necessary if an entity is "not generally paying the entity's debts as those debts become due unless they are the subject of a bona fide dispute[.]" There is not a bona fide dispute that Appellants were not paying the debts as they became due. Accordingly, it was not clearly against the logic of the circumstances presented to the circuit court nor so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration that the circuit court found a receiver necessary under section 515.510.1. The circuit court did not abuse its discretion in overruling Appellants' motion to vacate the receiver order.

### IV.        Receiver Order

Appellants contend the receiver order contravenes the MCRA.

14

**Standard of Review**

The interpretation of a Missouri statute is a question of law this Court reviews *de novo*. *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 662 (Mo. banc 2014). When there is no factual dispute, statutory application is also reviewed *de novo*. *Id.*

**Analysis**

Appellants argue the circuit court erred in overruling their motion to vacate because the receiver order grants Bank and receiver powers beyond those statutorily authorized and further precludes Appellants' exercise of certain rights. Appellants posit provisions of the receiver order impermissibly delegate certain rights and responsibilities of the receiver and the court to Bank. Bank responds the receiver order does not delegate managerial powers to it, but, rather, the receiver order merely provides a framework for the receiver to work with Bank prior to requesting approval from the circuit court. In particular, Appellants challenge paragraphs 11, 14, 16, 31, and 35 of the receiver order, alleging that, in requiring Bank's agreement or consent on various issues, such provisions impermissibly delegate Bank a power/authority that is exclusively the court's pursuant to section 515.540.1.[13] Yet each provision Appellants challenge requires the court's

---

[13] Section 515.540.1 provides in relevant part:

> Except as otherwise provided for by sections 515.500 to 515.665, the court in all cases has exclusive authority over the receiver, and the exclusive possession and right of control with respect to all real property and all tangible and intangible personal property with respect to which the receiver is appointed, wherever located, and the exclusive authority to determine all controversies relating to the collection, preservation, application, and distribution of all property, and all claims against the receiver arising out of

oversight. Indeed, Paragraph 11, regarding "Budgets," requires the receiver to provide the court any proposed budget. Paragraph 14, regarding "Assertion of Claims," provides the receiver shall bring any claim in "this Court" and shall not be entitled to settle any claims "without Court approval." Paragraph 16 provides the "Receiver's compensation shall be subject to the Court's review and approval." Paragraph 31, governing "Removal of the Receiver," requires that, if Bank wishes to remove the receiver, it must file such with the court, or the court itself may remove the receiver. Finally, Paragraph 35, governing the conversion of a receiver from a general receiver to a limited receiver, requires a motion to the court. The receiver order does not impermissibly delegate rights to Bank.

Appellants also challenge paragraphs 17, 18, and 22 of the receiver order, arguing such provisions grant the receiver power beyond those statutorily authorized. In particular, Appellants argue paragraphs 17 and 18 provide the receiver with *carte blanche* authority to retain and pay personnel, without any further court oversight in violation of section 515.605.1.[14] But it cannot be said that Paragraph 18 allows the receiver to employ professionals without court approval, as it is silent as to whether such employment is subject to court approval. Additionally, Appellants fail to show Paragraph

the exercise of the receiver's powers or the performance of the receiver's duties.

[14] Section 515.605.1, titled "Employment of professionals," provides: "The receiver, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons that do not hold or represent an interest adverse to the receivership …."

16

17, which governs *employment of management personnel*, violates section 515.605.1, as it governs *employment of professionals*. Further, Appellants' assertion that the receiver has *carte blanche* authority to pay professionals and management personnel is inaccurate. Paragraph 18 provides "professionals' compensation shall be subject to the court's review and approval." And, Paragraph 17, regarding management personnel, provides that payments not in the ordinary course of the receiver's business shall be subject to court approval. Consequently, the receiver does not have *carte blanche* authority to pay personnel.[15]

Appellants further challenge Paragraph 22, arguing it "attempts to erase the court's authority over receivership property …." Yet, Paragraph 22 provides the receiver may sell receivership property, but "any such sale or contract(s) for sale [of receivership property] shall be subject to Court approval …." The receiver order does not erase the court's authority over receivership property.

In addition, Appellants allege the receiver order "prioritizes the Bank" so Bank effectively controls the receivership. Appellants point to Paragraphs 32, 5.g., 7.e., and 27. But Paragraph 32, governing "Turnover of Receivership Property Upon Termination," requires court oversight. Additionally, while Paragraph 5.g. allows the receiver to borrow and incur secured debt without further court order, Appellants fail to

---

[15] Appellants also argue that, even when court approval is required, the receiver order eliminates the need for a motion, notice, and/or hearing in direct contravention of section 515.605.4. But it cannot be said the receiver order eliminates such, as the receiver order is silent as to any motion, notice, or hearing.

17

show how this violates the MCRA in light of section 515.545.3.[16]  Next, Paragraph 7.e. requires the receiver to discuss with Bank "the use of collateral and/or funding for this Receivership Action …."  Appellants fail to explain why Bank and the receiver having discussions means the receiver order prioritizes Bank or why this violates the MCRA.  Finally, Appellants allege Paragraph 27 attempts to circumvent the automatic stay provision of section 515.575 by creating an exception to the stay.  Section 515.575, however, states, "**Except as otherwise ordered by the court,** the entry of an order appointing a general receiver shall operate as a stay …." (Emphasis added).  Accordingly, the circuit court could limit the automatic stay.  Appellants' claim that the receiver order "prioritizes the Bank" fails.

Finally, Appellants contend the receiver order, in Paragraphs 5.e. and 9, precludes Appellants from exercising their right to file for bankruptcy, pursuant to Title 11 of the United States Code, by delegating that right to the receiver.[17]   They argue such delegation violates section 515.545(3).[18]  Appellants, however, make a conclusory

---

[16] 515.545.3 provides: "The various powers, authorities, and duties of a receiver provided by sections 515.500 to 515.665 **may be expanded, modified, or limited by order of the court.**" (Emphasis added).

[17] Appellants also argue such delegation violates their constitutional right to access courts pursuant to article I, section 14 of the Missouri Constitution and the First Amendment of the United States Constitution.  To preserve a constitutional question for review in this Court, however, it must be raised at the earliest opportunity.  *St. Louis Cnty. v. Prestige Travel, Inc.*, 344 S.W.3d 708, 712 (Mo. banc 2011).  Appellants filed a motion to amend the receiver order on August 16, 2021, and did not raise such arguments until one month later when they filed their motion to vacate.  Because they did not raise these issues at the earliest opportunity, their arguments are not preserved for review.

[18] Section 515.545.1(3) provides:

allegation that section 515.545(3) does not allow the receiver to file a bankruptcy claim but do not provide any explanation for such conclusion. Appellants merely point to the comments of the Uniform Commercial Real Estate Receivership Act, which is not controlling. Because Appellants fail to explain why the receiver order violates section 515.545(3), this argument is without merit.

Because Appellants fail to show the receiver order impermissibly delegates rights to Bank, grants powers beyond those statutorily authorized to the receiver or precludes Appellants' exercise of certain rights, Appellants' argument is without merit.

## Conclusion

The circuit court did not err in overruling Appellants' motion to vacate the receiver order. The circuit court's order is affirmed.

_____
Mary R. Russell, Judge

All concur.

_____

To assert any rights, claims, or choses in action of the debtor, if and to the extent that the rights, claims, or choses in action are themselves property within the scope of the appointment or relate to any estate property, to maintain in the receiver's name or in the name of the debtor any action to enforce any right, claim, or chose in action, and to intervene in actions in which the debtor is a party for the purpose of exercising the powers under this subsection[.]